Rasoull **ALEXANDER**, Appellant–
Defendant,

v.

**STATE of Indiana**, Appellee.

No. 49A02–0105–CR–324.

Court of Appeals of Indiana.

May 30, 2002.

972

David Becsey, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Following a bench trial, Rasoull Alexander was convicted of Unlawful Possession of a Firearm by a Serious Violent Felon,[1] a Class B felony, and Carrying a Handgun Without a License,[2] a Class A misdemeanor. Upon appeal, Alexander presents one issue for our review: whether his convic-

1. Ind.Code § 35–47–4–5 (Burns Code Ed. Supp.2001).

2. Ind.Code § 35–47–2–1 (Burns Code Ed. Repl.1998); Ind.Code § 35–47–2–23(c) (Burns Code Ed. Repl.1998).

tions violate the Double Jeopardy Clause of the Indiana Constitution.

We affirm in part and reverse in part.

At approximately 9:00 p.m. on December 31, 1999, Indianapolis police officers responded to a call of shots being fired. The individual firing the shots was described as a black male wearing a black hat. Upon arriving at the location identified in the call, the officers observed an individual matching the description getting into a car parked along the side of the street. The officers stopped this individual before he got into the vehicle, and as the officers approached him, they observed two individuals sitting in the front seat of the car, one of whom was Alexander, who was sitting on the passenger side. The officers also observed two handguns, later identified as a .44 caliber revolver and a 9mm handgun, lying on the front seat between Alexander and the other individual. Alexander was unable to produce a permit for either of the guns.

Alexander was charged with Count I, unlawful possession of a firearm by a serious violent felon, Count II, possession of cocaine and a firearm, Count III, possession of cocaine, and Count IV, carrying a handgun without a license.[3] On March 21, 2001, Alexander was tried by bench trial. At the conclusion of the evidence, the trial court found Alexander guilty of unlawful possession of a firearm by a serious violent felon as a Class B felony and of carrying a handgun without a license, as a Class A misdemeanor. The trial court sentenced Alexander to ten years imprisonment on the former and one year on the latter

3. Prior to the bench trial, the State dismissed Counts II and III.

conviction, the sentences to run concurrently.

Upon appeal, Alexander argues that his conviction and sentence for carrying a handgun without a license should be vacated because they violate double jeopardy considerations. Specifically, Alexander maintains that there is a reasonable possibility that the trial court used the same evidentiary facts to establish that he carried a handgun without a license and to establish that he unlawfully possessed a firearm as a serious violent felon.

Indiana's Double Jeopardy Clause is embodied in Article 1, Section 14 of the Indiana Constitution, which provides, "No person shall be put in jeopardy twice for the same offense." Our Supreme Court has concluded that this provision "was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). In addition to the traditional notion that double jeopardy bars subsequent prosecution, our Supreme Court has construed Indiana's Double Jeopardy Clause as also prohibiting multiple punishments. *Id.*

■ In *Richardson*, our Supreme Court established a two-part test for analyzing double jeopardy claims. Specifically:

"two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49.

The statutory elements test and the actual evidence tests are separate considerations under the double jeopardy analysis. *Id.* at 53. Thus, even where the statutory elements define the offense as capable of being committed by disparate acts, the convictions may nonetheless constitute a violation of double jeopardy "if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." *Castillo v. State*, 734 N.E.2d 299, 303 (Ind.Ct.App. 2000), *reh'g denied, trans. granted, summarily aff'd,* 741 N.E.2d 1196 (Ind.2001). *See also Richardson*, 717 N.E.2d at 53.

■ When a defendant challenges his convictions under the actual evidence prong of the *Richardson* analysis, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish one offense may also have been used to establish a second challenged offense. 717 N.E.2d at 53.[4] "The *Richardson* actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims." *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002).

Nonetheless, in *Spivey*, the Court found it necessary to clarify the *Richardson* actual evidence test, stating that the actual evidence test "is *not* merely whether the evidentiary facts used to establish *one* of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense." 761 N.E.2d at 833 (emphasis in original). The Court further stated that there is no double jeopardy violation when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all,* of the essential elements of a second offense. *Id.* In other words, the court indicated that

---

4. The *Richardson* Court couched the test in terms of the essential elements of the two

offenses being considered.

there will be a double jeopardy violation only where the evidentiary facts establishing *all* of the essential elements of one offense also establish *all* of the essential elements of a second challenged offense.

Notwithstanding the manner in which *Spivey* seems to phrase the *Richardson* actual evidence test, in application our Supreme Court has consistently overturned convictions upon double jeopardy grounds where the evidentiary facts establishing *an* essential element of one offense also establish *all* of the essential elements of the second challenged offense. Indeed, this is the import of the holding in *Richardson* itself.

In *Richardson*, the evidence presented at trial established that the defendant, along with two other individuals, hit the victim from behind with a beer bottle and knocked him to the ground. The three men then repeatedly kicked and beat him. While two of the men held the victim down, the third individual took the victim's billfold from his pocket. Before the three men left, they pushed the victim's body over the side of a bridge. The Court considered this evidence and concluded that there was "a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery." *Richardson*, 717 N.E.2d at 54.

We begin by noting that in *Richardson*, the evidentiary facts establishing *all* of the essential elements of the aggravated battery conviction could not have established *all* of the essential elements of robbery, in that the beating itself would not have established the taking element of the robbery conviction. However, where the reverse is considered, as did the *Richardson* court, looking first at the evidentiary facts establishing *all* of the essential elements of robbery and then at the evidentiary facts establishing *all* of the essential elements of

battery, the Court held that there was a double jeopardy violation.

Be that as it may, upon closer review, implicit in the *Richardson* Court's holding is that the double jeopardy violation did not result from the facts establishing *all* of the essential elements of robbery, but only those facts which established the serious bodily injury element of the Class A robbery charge and also *all* of the essential elements of the battery charge. In *Richardson*, the Court indicated that had actual evidence been presented to prove that the post-robbery conduct of pushing the victim off of the bridge resulted in serious bodily injury, then such may have constituted a factually separate battery justifying a separate conviction. From this, we infer that the Court was not concerned with the facts establishing *all* of the essential elements of robbery, but rather those evidentiary facts which established only one of the essential elements of the robbery conviction, that is, the serious bodily injury enhancement. Thus, while at a more general level it could be said that the facts establishing *all* of the essential elements of the robbery conviction also establish *all* of the essential elements of the battery conviction, such is an unclear statement given the Court's own analysis. In *Richardson*, it was but one evidentiary fact, i.e. the beating, which established *an* essential element of the robbery conviction and *all* of the essential elements of the aggravated battery conviction which constituted double jeopardy.

Similarly, in *Spears v. State*, 735 N.E.2d 1161 (Ind.2000), *reh'g denied*, the defendant was charged with murder and robbery, enhanced to a Class A felony because it resulted in serious bodily injury, which was alleged as the death which formed the basis for the murder conviction. In addressing the double jeopardy implications of the two convictions using the *Richardson* actual evidence test, the Court stated, "there is at least a reasonable possibility—

if not a near certainty—that the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing *an* essential element of robbery as a Class A felony." *Id.* at 1165 (emphasis supplied). In other words, the evidence establishing the serious bodily injury element of the robbery conviction also established all of the essential elements of the murder conviction. The Court's language again implies that where a fact or set of facts establishes *an* essential element of one offense and also *all* of the essential elements of a second offense, there is a double jeopardy violation.

In *Logan v. State,* 729 N.E.2d 125 (Ind. 2000), the Court again considered a challenge to two convictions under the *Richardson* actual evidence test. After considering the evidence presented at trial, the Court concluded that the same evidence used to support the murder conviction was also used to elevate the conviction for robbery to a Class A felony. *Id.* at 136.

Again, we may infer from the Court's holding that where the evidentiary facts establishing an element of one challenged offense also establish *all* of the essential elements of a second challenged offense, then the convictions cannot stand together.

In yet another case, *Hampton v. State,* 719 N.E.2d 803 (Ind.1999), the Court again considered a defendant's actual evidence challenge to his convictions for murder and robbery as a Class A felony. The Court stated that "[t]he same evidence that supported the murder conviction, *the act of stabbing,* may have also been used to convict Defendant of robbery as a Class A felony." *Id.* at 809 (emphasis supplied). In *Hampton,* one could conclude that the Court simply looked at one evidentiary fact, i.e. the act of stabbing, and because such established the essential elements of murder and was a common evidentiary fact necessary to prove *an* essential element of the robbery conviction, concluded that the convictions violated double jeopardy principles.[5]

5. Numerous other cases decided by our Supreme Court have reached results upon the facts of those cases which lead to the inescapable conclusion that when the evidentiary fact or facts necessary to prove *an* essential element of one offense also establish *all* of the essential elements of a second challenged offense, the offenses violate the Indiana Constitution's prohibition against double jeopardy. *See Johnson v. State,* 749 N.E.2d 1103 (Ind. 2001) (holding that convictions violated double jeopardy because the same evidence that supported murder conviction also established the serious bodily injury element of burglary offense); *Fosha v. State,* 747 N.E.2d 549 (Ind. 2001) (holding that evidence of the overt act alleged in the conspiracy to commit murder charge, i.e. the shooting, was also used to establish essential elements of murder); *Roby v. State,* 742 N.E.2d 505 (Ind.2001) (holding that the State used the same evidence to establish the essential elements of murder and the serious bodily injury element of Class B felony neglect); *Burnett v. State,* 736 N.E.2d 259 (Ind.2000) (holding that there was a reasonable possibility that the same evidence of a

stabbing used by the jury to establish the serious bodily injury element of aggravated battery as a Class B felony was also used to establish the substantial risk of death element of robbery as a Class A felony); *Grace v. State,* 731 N.E.2d 442 (Ind.2000) (holding that defendant's convictions for murder and robbery as a Class A felony could not stand together because they were based upon the same bodily injury to the same victim), *reh'g denied; Lowrimore v. State,* 728 N.E.2d 860 (Ind.2000) (concluding that evidence of the same serious bodily injury, i.e. a broken neck, was used to establish not only the murder charged but also the essential element of robbery as a Class A felony), *reh'g denied; Lundberg v. State,* 728 N.E.2d 852 (Ind.2000) (holding that it was reasonably possible that the jury relied upon the same evidence to establish the essential elements of murder and the overt act of the conspiracy charge); *Mitchell v. State,* 726 N.E.2d 1228 (Ind.2000) (holding that there was a reasonable possibility that the evidence offered to prove the resulting serious bodily injury for neglect as a Class B felony was used to establish the essential elements of

In the two and one-half years since the *Richardson* decision, the Court has routinely applied the *Richardson* actual evidence test such that where the facts establishing *an* essential element of one offense also establish *all* of the essential elements of a second challenged offense, the two convictions standing together violate double jeopardy.

If we interpret *Spivey* to indicate that our Supreme Court intended to change the manner in which the *Richardson* actual evidence test is to be applied, one may observe that the Court's "new" phrasing of the *Richardson* actual evidence test may, in some situations, be nothing more than a repetition of the statutory elements test. We do not perceive that to be the Supreme Court's intent. Thus, we are faced with a dilemma—whether to follow the example set forth in the application of double jeopardy principles or follow the Supreme Court's phrasing of the *Richardson/Spivey* actual evidence test. It is our view that the former is the more reasonable course to follow.

■ In the case at bar, Alexander asserts that the general nature of the charging information, and the broad, non-specific way the case was prosecuted and argued, i.e., without specific reference to separate guns for separate crimes, support his argument that each offense was not established by separate and distinct facts. Alexander also directs us to the trial court's statement made at the conclusion of the evidence:

"Under the theory of constructive possession, which is where this case falls, obviously what the State would have to show is knowledge of the weapon or contraband and a present ability to exert dominion, control or assert some possessory interest over the item. It strains credibility to suggest that Mr. Alexander would not have known that *they* [i.e. the handguns] were there. Both the police officers, as they walked up to the vehicle, looked through the windows and saw the *weapons* lying in the bench seat—nothing apparently obstructing them from seeing *them*. The knowledge could even be inferred—assuming that the statement attributable to Mr. Alexander was in fact made that he knew *they* were there—but he didn't own *them*. That might have been a response from someone not understanding constructive possession—believing that if it wasn't his *weapon*, that he could not be

murder), *reh'g denied; Marcum v. State*, 725 N.E.2d 852 (Ind.2000) (holding that there was at least a reasonable possibility, if not a near certainty, that the jury used the same evidentiary fact to prove *an* essential element of conspiracy to commit burglary and also the essential elements of the auto theft), *reh'g denied; Cutter v. State*, 725 N.E.2d 401, 410 (Ind.2000) (concluding that "it is highly likely that the same evidence that constituted the essential elements of murder ... was included among the evidence establishing the 'using or threatening the use of deadly force' *element* of rape as a Class A felony.") (emphasis supplied), *reh'g denied; Turnley v. State*, 725 N.E.2d 87, 91 (Ind.2000) (holding that "there is at least a reasonable possibility—indeed a high probability that the jury used the same evidentiary fact ... to prove *an* essential element of the conspiracy to commit murder (the overt act) and also the essential element of murder.") (emphasis supplied); *Chapman v. State*, 719 N.E.2d 1232 (Ind.1999) (holding under the *Richardson* actual evidence test that convictions for murder and robbery as a Class A felony violated double jeopardy where the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony); *Wise v. State*, 719 N.E.2d 1192 (Ind. 1999) (finding a double jeopardy violation where the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of arson as a Class A felony because it resulted in serious bodily injury to someone other than the defendant).

held accountable for *it.* So, I think the knowledge is—has been shown clearly. Knowledge that *the weapon* was there. The proximity—I've had testimony that *it* was lying in the middle of the bench seat. I've had testimony that *it* was up against his leg or very near him within a foot of him." Transcript at 55 (emphasis supplied).

Alexander asserts that the trial court's statement indicates that the trial court used the same evidentiary facts to establish the essential elements of unlawful possession of a firearm by a serious violent felon and also to establish the essential elements of carrying a handgun without a license.

To convict Alexander of unlawful possession of a firearm by a serious violent felon, the State was required to prove that Alexander was (1) a serious violent felon,[6] (2) who knowingly or intentionally, (3) possessed a firearm.[7] *See* I.C. § 35–47–4–5(c). As to the carrying a handgun without a license charge, the State was required to prove the essential elements of I.C. § 35–47–2–1, i.e. that Alexander (1) carried a handgun,[8] (2) in any vehicle.[9] *See Woods v. State,* 768 N.E.2d 1024 (Ind. Ct.App. 2002). *But see Collier v. State,* 715 N.E.2d 940 (Ind.Ct.App. 1999) (holding that violation of the statutory provision prohibiting possession of a handgun without a license requires only possession of a deadly weapon), *trans. denied.* The State was not required to prove that Alexander did not possess a valid license to carry the handgun because such is not an essential element of the crime, but rather proof of a valid license is a defense. *See Washington v. State,* 517 N.E.2d 77, 79 (Ind.1987); *Fields v. State,* 676 N.E.2d 27, 31 (Ind.Ct. App.1997) (Sullivan, J., dissenting), *trans. denied.*

Prior to trial, Alexander admitted to a prior felony conviction characterized as a "serious violent felony" under I.C. § 35–47–4–5(b), thereby conceding that he was a serious violent felon within the ambit of I.C. § 35–47–4–5(a). At trial, the State presented evidence that there were two handguns lying on the front seat of the car next to Alexander. From this evidence the trial court found Alexander guilty of the two charged offenses.

Our review takes into consideration the statement the trial court made at the conclusion of the evidence. Although the trial court did in passing note that there were multiple weapons, i.e. "they," "them," "weapons," found on the seat of the car, it appears that the trial court focused upon only one of the weapons in finding Alexander guilty of both crimes. Tr. at 55. After reciting the evidence, the trial court concluded that Alexander had knowledge of "the weapon" in that there was testimony that "it" was lying in the middle of the front seat and that "it" was very near his person. *Id.* The trial court then, without hesitation, entered convictions on both counts. From this statement, it appears

---

6. A "serious violent felon" is a person who has been convicted of committing a serious violent felony in Indiana. I.C. § 35–47–4–5(a). A "serious violent felony" includes "dealing in ... cocaine." I.C. § 35–47–4–5(b) (effective July 1, 1999). Here, Alexander stipulated to an August 14, 1996 conviction for Dealing in Cocaine, a Class B felony.

7. A firearm is defined as "any weapon that is capable of or designed to or that may readily be converted to expel a projectile by means of an explosion." Ind.Code § 35–47–1–5 (Burns Code Ed. Repl.1998).

8. A handgun is defined as "any firearm ... [d]esigned or adapted so as to be aimed and fired from one (1) hand, regardless of barrel length." Ind.Code § 35–47–1–6 (Burns Code Ed. Repl.1998).

9. Violation of I.C. § 35–47–2–1 is a Class A misdemeanor. *See* Ind.Code § 35–47–2–23(c) (Burns Code Ed. Repl.1998).

that the trial court relied upon only one of the handguns, which were found lying on the front seat of the car next to Alexander, in finding that Alexander constructively possessed a handgun. This evidence was used to prove both an essential element of the unlawful possession of a firearm by a serious violent felon, i.e. that Alexander possessed a firearm, and all of the essential elements of carrying a handgun without a license, i.e. that Alexander carried a handgun in the vehicle.

Moreover, the general nature of the charging information, and the broad, non-specific way the case was prosecuted and argued militates in favor of finding that there is a reasonable possibility that the same evidence was used to establish an essential element of one offense and all of the essential elements of the other offense. Indeed, the charging information for both offenses closely tracks the statutory language and refers only to "a handgun." Appendix at 30. Further, in the presentation of its case, the State failed to demonstrate how the offenses were supported by separate and distinct facts. Additionally, in its closing argument, the State failed to distinguish between the evidence as it related to either of the charges. *See Carroll v. State*, 740 N.E.2d 1225, 1232 (Ind.Ct. App.2000) (acknowledging that when considering double jeopardy claims, the reviewing court may consider evidence presented at trial and closing arguments of counsel), *trans. denied.* While we generally presume that the trial court knows and follows the law, here, in its findings, the trial court failed to distinguish between the evidence it used to support the two convictions.

Therefore, we hold that Alexander has demonstrated that there is a reasonable possibility that the evidentiary facts used to establish an essential of his conviction for unlawful possession of a firearm by a serious violent felon, i.e. that he construc-

tively possessed a firearm, were also used to establish that he possessed a handgun without a license. Therefore, we remand to the trial court with instructions to vacate Alexander's conviction and sentence for carrying a handgun without a license.

We affirm the Class B felony conviction but remand with instructions to vacate Alexander's conviction and sentence for carrying a handgun without a license.

KIRSCH, J., and ROBB, J., concur.