Samuel **HARDLEY**,
Appellant/Defendant,

v.

**STATE of Indiana, Appellee/Plaintiff.**

No. 49A05–0801–CR–29.

Court of Appeals of Indiana.

Sept. 26, 2008.

1142

Kathy Bradley, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Samuel Hardley appeals from his convictions of and sentences imposed for Class D felony Criminal Confinement[1] and Class A misdemeanor Battery.[2] Hardley contends that the State failed to produce sufficient evidence to sustain his conviction for criminal confinement and that that conviction and his battery conviction violate prohibitions against double jeopardy. The State cross-appeals, contending that the trial court erred in ordering sentences Hardley received in two different cause numbers to be served concurrently. We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On August 24, 2006, Hardley stole approximately $528–worth of alcoholic beverages, steaks, and clothing from a Meijer's store in Indianapolis. On August 25, 2006, the State charged Harley with theft in cause number 49F08–0608–FD–159522 ("Cause 159522"), and the trial court released him on his own recognizance.

At approximately 2:00 to 3:00 a.m. on September 13, 2006, while Hardley was still released on his own recognizance in Cause 159522, Ethel Richmond let him into her Indianapolis apartment. When Richmond awoke at 6:00 a.m. to prepare to go to work, Hardley was still asleep in a recliner. When Richmond, who was out of cigarettes, apparently took one of Hardley's, Hardley accused her of stealing from his backpack. Richmond then told Hardley and Norma Bailey, who was also staying in her apartment, that they had to leave because she was going to work.

Hardley told Richmond that he was not going anywhere and, "You stole something out of my backpack, bitch." Tr. p. 24. Hardley slapped Richmond, who fell onto a mattress. At that point, Hardley began to beat Richmond and restrained her such she could not stand up. While he had Richmond restrained, Hardley beat and kicked her in the chest and stomach. Richmond nonetheless managed to reach a telephone and, although she was unable to speak, she dialed 911 such that authorities were apparently able to hear the altercation. Hardley ran off when Bailey told him that police were on their way but was soon apprehended. As a result of the attack, Richmond suffered a swollen lip,

---

**1.** Ind.Code § 35–42–3–3(a)(1) (2005).

**2.** Ind.Code § 35–42–2–1(a)(1)(A) (2005).

some broken fingernails, and a bruise on her arm.

On September 14, 2006, in cause number 49F18–0609–FD–173415 ("Cause 173415"), the State charged Hardley with Class D felony criminal confinement, Class D felony intimidation, and Class A misdemeanor battery, in a charging information that provided, in relevant part, as follows:

COUNT I

Samuel Hardley, on or about September 13, 2006, did knowingly confine Ethel Richmond, without the consent of Ethel Richmond, by holding Ethel Richmond down;

. . . .

COUNT III

Samuel Hardley, on or about September 13, 2006, did knowingly touch Ethel Richmond in a rude, insolent, or angry manner, that is: struck Ethel Richmond with hands and/or fists, which resulted in bodily injury, that is: pain, redness, swelling, and/or cuts, to Ethel Richmond[.]

Appellant's App. pp. 18–19.

Following a bench trial on May 14, 2007, the trial court found Hardley guilty of criminal confinement and battery. Also on May 14, 2007, in Cause 159522, the trial court found Hardley guilty of Class D felony theft[3]. The trial court sentenced Hardley to one-and-one-half years of incarceration for theft, and, in Cause 173415, the trial court sentenced him to two years for criminal confinement and one year for battery. Although the State had requested that the sentences from the two cause numbers be served consecutively, the trial court ordered that all three sentences were to be served concurrently.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence to Sustain Criminal Confinement Conviction

■ Hardley contends that the State failed to establish a substantial enough inference with Richmond's liberty to sustain a criminal confinement conviction and that her testimony regarding the incident is incredibly dubious. In order to convict Hardley of Class D felony criminal confinement, the State was required to establish that he knowingly or intentionally confined Richmond without her consent. Ind. Code § 35–42–3–3(a)(1). According to statute, confinement requires a substantial interference with the liberty of a person. Ind.Code § 35–42–3–1 (2005).

■ Our standard of review for challenges to the sufficiency of the evidence supporting a criminal conviction is well-settled:

In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. We look to the evidence most favorable to the [judgment] and reasonable inferences drawn therefrom. We will affirm the conviction if there is probative evidence from which a reasonable [trier of fact] could have found Defendant guilty beyond a reasonable doubt.

*Vitek v. State,* 750 N.E.2d 346, 352 (Ind. 2001) (citations omitted).

■ We may, however, apply the 'incredible dubiosity' rule to impinge upon a trier of fact's function to judge the credibility of a witness. *Love v. State,* 761 N.E.2d 806, 810 (Ind.2002).

If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a

**3.** Hardley does not challenge his theft conviction.

defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Love,* 761 N.E.2d at 810 (citations omitted).

Hardley contends that he did not substantially interfere with Richmond's liberty because she was able to reach the telephone and dial 911. Richmond, however, testified that Hardley "had [her] down with [her] arms up[,]" that she could not move or "get up[,]" and that "he had [her] pinned down." Tr. pp. 24–26. Richmond testified that the telephone was "right there beside the mattress" and that she was able to knock it off the hook and dial 911. In our view, the record indicates that Richmond was able to reach the telephone and dial 911 despite Hardley's physical confinement of her thanks primarily to the fortuitous location of the device and then only with difficulty. Even after reaching the telephone, Richmond was unable to speak to anyone on the other end of the line. We are unaware of any authority holding that complete incapacitation is required in order to establish a substantial interference with liberty, and decline impose such a requirement today. We do not believe that Richmond's ability to reach the telephone indicates that her liberty was not substantially impaired.

Hardley also contends that Richmond's testimony is incredibly dubious in that she testified that he held her arms but that she was able to dial the telephone and that she testified that he had been kneeling but also managed to kick her. Hardley's argument assumes, however, that the evidence estab-lishes that he held her arms and kneeled throughout the incident. We do not, however, read Richmond's testimony that way. In our view, the evidence establishes a somewhat fluid struggle, with Hardley standing or kneeling at different times and restraining Richmond in, perhaps, various ways, one of which was holding her arms. Hardley's argument in this regard is merely an invitation to reweigh the evidence, one that we decline.

## II. Double Jeopardy

 In *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), the Indiana Supreme Court held "that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to ... the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49–50. The Richardson court stated the actual evidence test as follows:

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53. The Indiana Supreme Court has also explained that, when applying the actual evidence test, the question

> is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one

offense also establish only one or even several, but not all, of the essential elements of a second offense. *Spivey v. State,* 761 N.E.2d 831, 833 (Ind. 2002). In determining what evidence the trier of fact used to establish the essential elements of an offense, "we consider the evidence, charging information, final jury instructions ... and arguments of counsel." *Rutherford v. State,* 866 N.E.2d 867, 871 (Ind.Ct.App.2007).

Here, we do not believe there is a reasonable possibility that the trial court used the same actual evidence to find that Hardley committed battery and criminal confinement. In reaching this conclusion, we consider both the charging information and evidence presented.[4] As charged, the offenses do not share any common essential elements, much less all. For the battery charge, the State specifically alleged that striking with the hands and/or fists was the touching, not any touching that might have restrained Richmond. As for the criminal confinement charge, the State specifically alleged that Hardley restrained Richmond by holding her down, not through any physical blows. The evidence clearly supports these specific charges and establishes that Hardley slapped, punched, and kicked Richmond (evidence supporting the battery charge) and also that he held her down (evidence supporting the criminal confinement charge). The fact that the crimes might have taken place simultaneously is not dispositive in the *Richardson* actual evidence analysis. The only question is whether the fact-finder relied on different evidentiary facts to support the two convictions, and we conclude that

here it did. Hardley's convictions for criminal confinement and battery do not violate the *Richardson* actual evidence test.

### III. Consecutive Sentences[5]

■ On cross-appeal, the State contends that the trial court erred in failing to order that Hardley's sentences in Causes 159522 and 173415 be served consecutively. As an initial matter, the dissent argues that the State should not have been able to raise this issue on cross-appeal. In so doing, the dissent first concludes that the State waived the issue by failing to lodge a contemporaneous objection. We decline to conclude, however, that the waiver doctrine precludes the State from raising the issue. It is well-settled that an illegal sentence constitutes fundamental error.

> Generally, a failure to object to error in a proceeding, and thus preserve an issue on appeal, results in waiver. However, a court may remedy an unpreserved error when it determines the trial court committed fundamental error. An improper sentence constitutes fundamental error and "cannot be ignored on review." We may correct sentencing errors by the trial court on appeal even though the issue was not raised below.

*Groves v. State,* 823 N.E.2d 1229, 1232 (Ind.Ct.App.2005) (citations omitted). We cannot ignore an illegal sentence, even if the State did fail to properly preserve the issue.

The dissent also relies on this court's ruling in *Hoggatt v. State,* 805 N.E.2d 1281 (Ind.Ct.App.2004), to conclude that the State must act within thirty days if it

---

**4.** Neither party made opening statements or final arguments, and there are, of course, no jury instructions in a bench trial.

**5.** Hardley does not directly respond to the State's cross-appeal issue in his reply brief, but, rather, seems to argue for the first time

that he is entitled to immediate release from the Department of Correction because he has already served his sentence. Because "[n]o new issues shall be raised in a reply brief[,]" we will not address this argument in this appeal. Ind. Appellate Rule 46(C).

seeks to correct an illegal sentence. In that case, the trial court erroneously imposed concurrent sentences where Hoggatt had committed crimes while released on bond in another cause number. *Id.* at 1282. As a result, Hoggatt's sentence was 514 days shorter than it should have been. *Id.* Approximately one year following Hoggatt's release, the State filed a motion to correct erroneous sentence, which the trial court granted, also ordering that Hoggatt be taken back into custody. *Id.* On appeal, we reversed the trial court, concluding that a motion to correct error was not an appropriate vehicle for correcting such an error, because Hoggatt's sentence was not erroneous on its face. *Id.* at 1283–84. We concluded that the opportunity for correction of such an error by the State would be limited to challenges brought within thirty days. *Id.* at 1284.

To the extent, however, that *Hoggatt* suggests that the State must challenge an illegal sentence within thirty days, we decline to follow it. In our view, the crucial question is not whether the issue is raised within thirty days, but whether it is raised on direct appeal. While it is true that direct appeals generally must be initiated within thirty days of the challenged judgment or order, *see* Ind. Appellate Rules 8, 14, imposition of a rigid thirty-day deadline in this context leads to absurd results. First and foremost, concluding that the State must raise such a claim within thirty days would leave the State entirely without remedy. Indiana Code section 35–38–4–2 governs the types of rulings from which the State may initiate a direct ap-

peal in criminal cases, and an erroneous sentence is not listed among them. In other words, strict adherence to *Hoggatt* would require the State to do something it cannot legally do.

Second, the *Hoggatt* court relied on *Robinson v. State*, 805 N.E.2d 783 (Ind.2004), for the proposition that a sentence challenge by the State must be filed within thirty days. *Robinson*, however, does not stand for that proposition, requiring only that a challenge to a sentence defect not facially apparent "may be raised only on direct appeal[,]" *not* that the challenge must be brought within thirty days. *Id.* at 787. We conclude that the State may challenge an illegal sentence in a cross-appeal,[6] even when the defect is not facially apparent. As such, we conclude that the State's challenge to Hardley's sentence is properly before this court.

■ Turning to the merits of the State's claim, Indiana Code section (d) provides, in relevant part, that "[i]f, after being arrested for one (1) crime, a person commits another crime . . . upon the person's own recognizance[,] the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed." We agree with the State that the sentences from the two cause numbers are required to be served consecutively and that the trial court erred in ordering otherwise. We reverse and remand with instructions to order that Hardley's sentences from Causes 159522 and 173415 be served consecutively.

---

**6.** We are unaware of any circumstances under which a cross-appeal issue is treated any differently than one raised by the appellant, and the Indiana Rules of Appellate Procedure support equal treatment. Indiana Appellate Rule 9(D) provides that an appellee may cross-appeal without filing a notice of appeal by raising the cross-appeal issues in its appel-

lee's brief. Once raised, cross-appeal issues are treated identically to issues raised by the appellant. *See* Ind. Appellate Rule 46(D). Moreover, as with the imposition of a thirty-day deadline, concluding that a cross-appeal issue is not part of a "direct appeal" would leave the State without remedy in cases such as this.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., concurs.

SULLIVAN, S.J., dissents with opinion.

SULLIVAN, Senior Judge, concurring in part and dissenting in part.

I concur with respect to Part I of the majority opinion. However, I respectfully dissent as to Parts II and III.

## II.

### Double Jeopardy

Hardley claims that under the "actual evidence" test of *Richardson v. State,* 717 N.E.2d 32 (Ind.1999) the two convictions violate double jeopardy considerations. I agree.

The State maintains that the evidentiary facts and the charging information "demonstrate two separate incidents." (Appellee's Br. 11). The State supports this position by concluding that the battery conviction was based "exclusively on the slapping of Ms. Richmond, while the Criminal Confinement was based exclusively on what happened thereafter, when Ms. Richmond attempted to call 911" (*Id.*).

These conclusions do not appear to be so obviously justified. Although the charge for battery does not refer to Hardley's kicking of Richmond it is not restricted to the act of slapping her. It alleges that he struck her "with hands and/or fists, which resulted in bodily injury, that is: pain, redness, swelling and/or cuts ..." In ordinary parlance a slap is administered by a hand not a fist. Furthermore, although the slap knocked Richmond to the mattress it was depicted as a single blow and would not result in any more than the swollen lips and a degree of pain which Richmond said was caused by the slap. Richmond, however sustained other injuries from the beating which took place during the confinement.

Under these circumstances, I am unable to say with a degree of assurance that the trial court separately compartmentalized the evidence of the slap from the evidence of the beating administered during the confinement. It appears to me that the court, in reaching its determination upon the two charges, considered the totality of the events and actions of the defendant as a continuing incident.

Here, as in *Bruce v. State,* 749 N.E.2d 587 at 592 (Ind.Ct.App.2001), Richmond sustained injuries during the beating-confinement unrelated to the slap. I am unable to say that there is no reasonable possibility that the same evidentiary facts were not used to support both convictions. See *Bradley v. State,* 867 N.E.2d 1282 (Ind.2007); *Ransom v. State,* 850 N.E.2d 491 at 504 (Ind.Ct.App.2006).[7]

7. Although I find no published Indiana precedent directly on point, I discern no basis upon which to apply a different "same evidence" test to a bench trial as opposed to a jury trial. In point of fact, the opinion in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999) which established the same evidence test, does not use language restricting its application to jury trials. It uses the phrases "trier of fact" and "fact-finder." 717 N.E.2d at 53. Many, if not most, subsequent cases on the matter use similar phrasing.

Furthermore, it is appropriate to take cognizance of Justice Boehm's separate opinion in *Guyton v. State,* 771 N.E.2d 1141 at 1145 et. seq. (Ind.2002). In that opinion he notes that the Supreme Court has effectively abandoned the *Richardson* test in favor of Justice Sullivan's *Richardson* enunciation of the five situations in which two convictions may not coexist. One of these is where one crime "consists of the very same act as an element of [the other]." (Emphasis supplied). *Richardson v. State,* supra (Sullivan J. concurring) 717 N.E.2d at 55. This enunciated situation

Accordingly, I would reverse the conviction for Battery as a Class A felony and vacate the concurrent sentence upon that conviction.[8] I would affirm, as does the majority, the conviction and 730 day sentence upon the Confinement charge.

## III.

### Consecutive Sentences

The State notes that less than one month after he had been released upon his own recognizance upon an unrelated Class D felony Theft charge, Hardley committed the confinement here involved.

The State is therefore correct that I.C. 35–50–1–2(d) specifies that the Confinement sentence must be ordered consecutive to the 910 day sentence in the theft case under Cause Number 49F18–0608–FD–159522. The majority opinion agrees with the State and orders the sentences in the two cause numbers to be served consecutively.

In this case, at the sentencing hearing during which the sentences in both cause numbers were considered and imposed, the State requested the sentences "under each cause number to be served consecutively." (Tr. 12). However, the State did not premise its request upon the mandatory consecutive sentence provision of I.C. 35–50–1–2(d). In any event the trial court explicitly made it clear that the sentences were concurrent and the State did not respond or react by pointing out the statutory requirement for consecutive sentences; nor did the State thereafter, within the thirty day allowable period, file a Motion to Correct Erroneous Sentence. It was not until the State filed its response brief in this appeal that the issue was raised.

*Hoggatt v.State*, 805 N.E.2d 1281 (Ind. Ct.App.2004), *reh.* 810 N.E.2d 737 dealt with an analogous situation. There, defendant was out on bond from an unrelated charge when he committed another offense. The judgment of conviction upon each of the cause numbers failed to reflect that the sentences were to be served consecutively. Accordingly the Department of Correction ran the sentences concurrently and released Hoggatt at the end of the indicated time. One year later, the State filed a Motion to Correct Sentencing Error which the court granted. Hoggatt was ordered to be taken into custody to serve the additional 514 days which would have been served under consecutive sentences.

This court held that a motion to correct an erroneous sentence is only appropriate where the sentence is "erroneous on its face". *Robinson v. State*, 805 N.E.2d 783 (Ind.2004). The *Hoggatt* court further observed that whether the defendant was free on bond was not apparent from the face of the sentencing judgment and that therefore the sentence was not facially erroneous. Where, as here, the error must be discovered by resort to matters not on the face of the sentencing order, and it is the State which is seeking relief, "the State must take action within thirty days

---

was essentially the rationale for this court's opinion in *Alexander v. State*, 768 N.E.2d 971 (Ind.Ct.App.2002), *transfer denied*.

**8.** With respect to whether the trial court's conviction here for battery as well as for confinement runs afoul of double jeopardy principles, I would acknowledge that trial judges are presumed to correctly apply applicable law. However, unless the court states its differentiating evidentiary analysis there is no basis upon which a conclusion could be reached with assurance that the court did not consider some of the same evidence as it related to the two charges. It is for this reason that I am unable to concur in affirmance of both conviction.

or forfeit is right to challenge an erroneous sentence." 805 N.E.2d at 1284.

The State seeks to avoid this result by citing to *Barnett v. State*, 834 N.E.2d 169 (Ind.Ct.App.2005). In that case a different panel of this court cited *Groves v. State*, 823 N.E.2d 1229 (Ind.Ct.App.2005) which in turn relies upon *Morgan v. State*, 417 N.E.2d 1154 (Ind.Ct.App.1981) for the proposition that an improper sentence is fundamental error which cannot be ignored on review. However, the proposition, as stated, is not a complete recitation of the applicable law.

*Morgan* says that on appellate review the issue is to be addressed. It states by way of qualification, however, that even if the issue was not raised at the trial court level the sentencing error *"may* be corrected" (emphasis supplied) 417 N.E.2d at 1156, when the error appears facially.

In light of my reading of *Morgan*, as the authority for the *Barnett* and *Groves* decisions I conclude that the opinion in *Hoggatt* remains the applicable law for a situation such as now before us.[9]

In so stating, I am not unaware that notwithstanding that I.C. 35–38–4–2 does not permit an appeal by the State for sentencing error, cases have held that sentencing error may be raised for the first time on appeal. In *Stephens v. State*, 818 N.E.2d 936 (Ind.2004) our Supreme Court acknowledged that line of cases and without endorsing those holdings said that "precedent dictates" that the sentencing issue was properly before the Court. 818 N.E.2d at 940. The author of this opinion did likewise in *Abron v. State*, 591 N.E.2d 634 (Ind.Ct.App.1992). In light of *Hoggatt*

and in view of considerations of fundamental fairness in such matters, I have altered my position to the extent that I now feel that the State may not unreasonably delay presenting such question. It should not be permitted to "wait any length of time it chooses to appeal. .". See *State v. Snider*, 892 N.E.2d 657, 2008 WL 3463254, (Ind.Ct. App.), a published order by a unanimous panel of this court. The rationale of *Hoggatt v. State*, supra constitutes a just and proper resolution to the issue before us.

For the reasons stated I would vacate the battery conviction but would affirm the conviction and sentence upon the confinement conviction and would also affirm the concurrent sentences imposed in the disparate cause numbers.

---

**9.** In his reply brief, Hardley opines that even if we were to hold that the sentences in the two cause numbers should have been served consecutively, he has been incarcerated for time equivalent to consecutive sentences of 545 days on # 9522 (the theft conviction) and 730 days on # 3415 (the confinement conviction) less credit time. Because I would validate the sentences as imposed, i.e. concurrent sentences, I do not express an opinion as to this viewpoint.