

**FILED**

Sep 29 2025, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Esequiel Trejo, Jr.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

September 29, 2025

Court of Appeals Case No.
25A-CR-39

Appeal from the St. Joseph Superior Court

The Honorable Elizabeth C. Hurley, Judge

Trial Court Cause No.
71D08-2308-MR-16

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

[1] After a jury found Esequiel Trejo, Jr. guilty of murder and conspiracy to commit murder, the trial court entered a judgment of conviction for murder but not conspiracy, citing "issues regarding double jeopardy." Transcript Vol. 4 at 12. On appeal, Trejo argues that his murder conviction is not supported by sufficient evidence. On cross-appeal, the State contends that the court committed a fundamental error when it failed to convict Trejo of both murder and conspiracy. We disagree with both arguments and affirm.

## Facts and Procedural History

[2] On July 10, 2023, seventeen-year-old Luis Hernandez-Acosta and teenager Israel Vargas[1] agreed to meet and "confront each other." Tr. Vol. 3 at 8. That night, Hernandez-Acosta asked several of his friends and relatives to come with him to "bang it out wit [sic]" Vargas. Exhibits Vol. 7 at 114. The group he assembled walked with him to El Tecate, a restaurant in South Bend near the area where Vargas said he would be that evening. The group wore dark clothes, covered their faces with masks, and carried handguns.

[3] Meanwhile, Vargas had assembled his own group, which included Trejo and Edwin Torres-Becerril, who were both sixteen-years-old. Vargas was armed

---

[1] Vargas's exact age is not clear from the record before us.

with a 9mm revolver, Trejo with a .40 caliber Glock 22, and Torres-Becerril with a 9mm Glock 17. Trejo and Torres-Becerril both wore masks.

[4] Vargas's group drove to El Tecate and, as they neared the restaurant, saw Hernandez-Acosta's group standing in the street. They got out of the car intending to exchange "gunfire" with them. Tr. Vol. 3 at 10. However, Hernandez-Acosta and his group ran away, and Vargas, Trejo, and Torres-Becerril were not "able to catch up to them[.]" *Id.* Having failed to confront Hernandez-Acosta, Vargas went home. However, Trejo and Torres-Becerril regrouped at Trejo's house and asked Trejo's cousin to give them a ride back to the restaurant so they could continue searching for Hernandez-Acosta.

[5] When they returned to El Tecate, Trejo and Torres-Becerril saw Hernandez-Acosta's group walking across the street toward the restaurant. They got out of the car and walked behind a house into an alley hoping "to cut off" Hernandez-Acosta's group and "get into a shootout with them[.]" *Id.* at 14-15. They hid next to a garage and, as Hernandez-Acosta passed by, Trejo opened fire with his Glock 22. Hernandez-Acosta returned fire before falling to the ground. He had been shot in his right leg, right hand, and both shoulders. Trejo and Torres-Becerril fled the scene on foot and hid in a nearby backyard until morning.

[6] South Bend police officers arrived on the scene within minutes of the shooting. They found Hernandez-Acosta lying on the ground, where he was soon pronounced dead. Though no bullets were recovered from his body, officers

found a spent .40 caliber shell casing next to the garage from where Trejo had fired his Glock 22. They also found a .40 caliber bullet embedded in a building behind Hernandez-Acosta and a .40 caliber bullet fragment with markings consistent with having been fired from a Glock. During a subsequent investigation, officers found numerous unfired .40 caliber rounds in Trejo's bedroom and five spent 9mm shell casings in Torres-Becerril's home.

[7] The State charged Trejo with Count I: Murder, a felony;[2] Count II: Conspiracy to Commit Murder, as a Level 1 felony;[3] and a firearm enhancement.[4] At trial, a jury found Trejo guilty of murder and conspiracy to commit murder but returned a verdict of not guilty on the firearm enhancement. At the sentencing hearing, the trial court entered judgment of conviction for murder but not conspiracy "to avoid any issues regarding double jeopardy." Tr. Vol. 4 at 12. It sentenced Trejo to fifty-five years, to be executed in the Indiana Department of Correction. Trejo appeals his murder conviction and the State cross-appeals the court's decision not to convict Trejo of conspiracy to commit murder.

---

[2] Ind. Code § 35-42-1-1(1).

[3] I.C. § 35-41-5-2(a)(2).

[4] I.C. § 35-50-2-11(d).

# Discussion and Decision

## 1. Sufficiency of the Evidence

[8] Trejo argues the evidence presented at trial was insufficient to support his murder conviction. When reviewing a challenge to the sufficiency of the evidence, we are mindful that it is the jury's role, not ours, "'to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.'" *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024) (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). Additionally, "we consider only the evidence most favorable to" the conviction. *Id.* We will affirm a conviction unless no reasonable jury could have found "'the elements of the crime proven beyond a reasonable doubt.'" *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

## A. The Offense Charged

[9] We begin by noting that Trejo contends that he "was not charged with [m]urder but" rather with aiding, inducing, or causing murder. Appellant's Reply Brief at 7. Indeed, the charging information filed by the State suggests that Trejo was charged with "<u>COUNT I:</u> AIDING, INDUCING, OR CAUSING MURDER[.]" Appellant's Appendix Vol. 2 at 15. However, under Indiana law, aiding, inducing, or causing murder is *not* a separate offense from murder. Instead, under the accomplice liability statute, Indiana Code section 35-41-2-4, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" The appellate courts routinely observe that "[t]he accomplice liability statute does not set forth a

separate crime, but merely provides a separate basis of liability for the crime that is charged." *Brooks v. State*, 895 N.E.2d 130, 133 (Ind. Ct. App. 2008) (citing *Hampton v. State*, 719 N.E.2d 803, 807 (Ind. 1999)), *reh'g denied*.

[10] Here, though the charging information purports to charge Trejo with aiding, inducing, or causing murder, the specific allegation made by the State was that Trejo "did knowingly kill another human being[.]" Appellant's App. Vol. 2 at 15; *see also* I.C. § 35-42-1-1(1) (defining murder as "knowingly . . . kill[ing] another human being"). The title and body of Count I create some ambiguity as to whether Trejo was charged as the principal actor in killing Hernandez-Acosta, as an accomplice to that crime under the accomplice liability statute, or both. *See, e.g., Brooks*, 895 N.E.2d at 133 (explaining that it is permissible "to instruct the jury on accomplice liability *even where the defendant was charged as a principal*") (emphasis added).

[11] The final instructions given to the jury contained a similar ambiguity. The jury was instructed as follows regarding Trejo's murder charge:

**I.C. 35-42-1-1 Murder**

* * *

Before you may convict the Defendant of Count I: Aiding, Inducing, or Causing Murder, a felony, the State must have proved each of the following beyond a reasonable doubt:

1.      The Defendant

2. knowingly

3. killed

4. Luis Hernandez-Acosta

If the State did prove each of these elements beyond a reasonable doubt, you may find the Defendant guilty of Count I: Aiding, Inducing, or Causing Murder, a felony.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Count I: Aiding, Inducing, or Causing Murder, a felony.

**I.C. 35-41-2-4 Aiding, Inducing, or Causing**

A person who, knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. Before you may convict the Defendant of Count I, you must find there is evidence of the Defendant's affirmative conduct, either in the form of acts or words, from which an inference of a common design or purpose may be reasonably drawn. The Defendant's conduct must have been voluntary and in concert with the other person.

Appellant's App. Vol. 2 at 82. These instructions appear self-contradictory, as the jury was instructed that it "must find" find Trejo not guilty of aiding, inducing, or causing murder if the State failed to prove that he knowingly killed Hernandez-Acosta, but may nonetheless "convict" him of the same charge if it found that he acted "voluntary[ily] and in concert with" another person who had committed the crime. *Id.*

[12] However, we find that these ambiguities are immaterial to the issue presented on appeal: whether there was sufficient evidence to support Trejo's murder conviction. Specifically, as outlined below, we find that the evidence was sufficient for the jury to conclude *either* that Trejo (i) knowingly killed Hernandez-Acosta, and thus could be found guilty of murder under Indiana Code section 35-42-1-1(1) **or** (ii) knowingly or intentionally aided, induced, or caused Torres-Becerril to kill Hernandez-Acosta, supporting his murder conviction under the accomplice liability statute.

## B. Murder

[13] To convict Trejo of murder, as charged here, the State was required to prove beyond a reasonable doubt that he "knowingly kill[ed]" Hernandez-Acosta. Appellant's App. Vol. 2 at 15; *see also* I.C. § 35-42-1-1(1).[5] We find that the evidence presented at trial was sufficient to prove beyond a reasonable doubt that Trejo shot and killed Hernandez-Acosta. Torres-Becerril testified that Trejo fired a .40 caliber Glock 22 at Hernandez-Acosta, who then "f[ell] to the floor." Tr. Vol. 3 at 16. At the scene, officers found a spent .40 caliber shell casing, a .40 caliber bullet embedded in a building across from where Torres-Becerril claimed Trejo fired, and a .40 caliber bullet fragment with markings consistent with having been fired from a Glock. If the jury believed Torres-

---

[5] Indiana Code section 35-42-1-1(1) provides that a person commits murder if they "knowingly *or intentionally* kill[] another human being[.]" (emphasis added). However, here, the State alleged that Trejo acted knowingly, not intentionally, when he killed Hernandez-Acosta. *See* Appellant's Appendix Vol. 2 at 106-07 (instructing the jury that to find Trejo guilty of murder, the State must have proven he knowingly killed Hernandez-Acosta).

Becerril's testimony that he was carrying a 9mm handgun that evening, they could have reasonably concluded that the .40 caliber rounds found at the scene could have only been fired by Trejo's Glock 22.

[14] In fact, Trejo admits on appeal that he "fired his handgun" as "Hernandez-Acosta . . . exited the alley[.]" Appellant's Br. at 8. Despite making this admission, he argues "[t]here is no evidence that [he] intended to kill Hernandez-Acosta when he fired a gun that night." *Id.* at 12. This argument fails because the State did not have to prove Trejo *intentionally* killed Hernandez-Acosta, but rather that he did so *knowingly*. "One 'knowingly' kills when he is 'aware of a high probability' that his conduct might kill." *Griffin v. State*, 963 N.E.2d 685, 692, (Ind. Ct. App. 2012) (quoting *Etienne v. State*, 716 N.E.2d 457, 463 (Ind. 1999)). And, as the Indiana Supreme Court recognized in *Jackson v. State*, a juror may infer that a defendant acted knowingly "from the use of a deadly weapon in a manner likely to cause death." 728 N.E.2d 147, 153 (Ind. 2000). Here, the jury could have inferred that when Trejo fired his weapon at Hernandez-Acosta, he was aware of a high probability that Hernandez-Acosta would be shot and killed and thus acted knowingly when killing him.

## C. Accomplice Liability

[15] To convict Trejo of murder under a theory of accomplice liability, the State had to prove that he "knowingly or intentionally aid[ed], induce[d], or cause[d] another person to" kill Hernandez-Acosta. I.C. § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit

an offense commits that offense[.]").  Even if the jury was unsure whether Trejo or Torres-Becerril had fired the fatal shots, the evidence showed that Trejo accompanied Torres-Becerril to the scene of the murder, laid in wait for Hernandez-Acosta, was himself masked and armed, and bullets fired from his caliber gun were found at the scene.  All these facts are sufficient to support his murder conviction under a theory of accomplice liability.

[16]  We find these facts comparable to those in *Jackson v. State*, where another panel of this Court affirmed the defendant's murder conviction when he

> was involved with other members of [a] gang in an ongoing dispute with [members of another gang].  . . . Jackson was armed and with [] gang members . . . twelve hours before the shooting [and] was in the car used in the shooting at some point[.] . . . Multiple bullets fired from more than one weapon were found at the scene, including bullets from the caliber gun Jackson was recorded holding just hours before the shooting.  Far from opposing the crime, Jackson was an active participant in the events leading up to it[.] . . .

> Based on this evidence, the jury could have concluded beyond a reasonable doubt that Jackson . . . [was] present at the crime scene and [] was at least an accomplice to [the] murder.

222 N.E.3d 321, 337 (Ind. Ct. App. 2023), *trans. denied*.  Thus, we agree with the State that "[e]ven if there was not sufficient evidence to show that Trejo himself murdered Hernandez-Acosta, [his] conduct . . . was sufficient to show that he was an accomplice and knowingly aided, induced, or caused [the] murder."  Appellee's Br. at 12.

* * *

[17] For these reasons, regardless of whether the jury found Trejo guilty of knowingly killing Hernandez-Acosta or knowingly or intentionally aiding, inducing, or causing Torres-Becerril to do so, his murder conviction is supported by sufficient evidence.

## 2. Conspiracy to Commit Murder

[18] On cross-appeal, the State argues that "[t]he trial court erroneously merged Trejo's convictions for murder and conspiracy to commit murder."  Appellee's Br. at 12.  We note, however, that the court did not merge Trejo's convictions, but rather declined to enter a judgment of conviction on the conspiracy charge because of what it described as "issues regarding double jeopardy."  Tr. Vol. 4 at 12; *see West v. State*, 22 N.E.3d 872, 875 (Ind. Ct. App. 2014) (quoting *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied*) (explaining that "[a] double jeopardy violation occurs when judgments of conviction are entered for the same criminal act and cannot be remedied by the 'practical effect' of concurrent sentences *or by merger after conviction has been entered*.") (emphasis added), *trans. denied*.

[19] We further note that the State did not object to the court's decision not to convict Trejo of conspiracy, so before addressing the merits of the State's

argument we must determine whether the issue has been preserved for appeal.[6] Generally, "failure to object at trial constitutes procedural default precluding consideration of the issue on appeal." *Halliburton v. State*, 1 N.E.3d 670, 679 (Ind. 2013). The State acknowledges "that the prosecutor did not object to the trial court's decision" but posits that we "can address the State's cross-appeal [] notwithstanding the deputy prosecutor's omission of an objection." Appellee's Br. at 13 n.4. Specifically, the State argues that "[q]uestions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal, or even by this [C]ourt sua sponte." *Id.* (quoting *Howell v. State*, 97 N.E.3d 253, 263 (Ind. Ct. App. 2018), *trans. denied*).

[20] Under the fundamental error doctrine, we may review an issue raised by a party for the first time on appeal if the alleged error "'constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the *defendant* fundamental due process.'" *Halliburton*, 1 N.E.3d at 678 (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)) (emphasis

---

[6] Trejo argues that the State invited any error because it "agreed that [j]udgment should not be entered on the [c]onspiracy count." Appellant's Reply Br. at 8. We disagree. After the jury returned guilty verdicts on both the murder and conspiracy charges, the trial court advised the parties sua sponte that it would not "be entering judgment of conviction on both Counts I and II" and would do so "on Count I only." Tr. Vol. 3 at 248. Though the State did not object to this, there is no indication that it agreed. Then, at the start of the sentencing hearing, the court asked the parties, "[S]o that we're all on the same page before we start: [t]here was [sic] guilty verdicts on Counts I and II in this case, but I'd be entering judgment of conviction only on Count I?" Tr. Vol. 4 at 8. The State replied, "Yes, Judge[,]" and Trejo's counsel agreed, "That's my understanding, yes." *Id.* We agree with the State that a reasonable interpretation of this exchange is that it was merely "recogni[zing] the [] court's earlier sua sponte ruling[.]" Appellee's Cross-Reply Br. at 5 (internal italics omitted). Thus, we decline to find invited error here. *See Batchelor v. State*, 119 N.E.3d 550, 558 (Ind. 2019) (quoting *Brewington v. State*, 7 N.E.3d 946, 954 (Ind. 2014)*, reh'g denied, cert. denied*) (explaining that a party invites an error only if it "resulted from [their] affirmative actions as part of a deliberate, 'well-informed' trial strategy").

added). But because this doctrine is concerned with a *defendant's* fundamental right to a fair trial, the State's attempt to invoke it on cross-appeal is unavailing. *See Hardley v. State*, 905 N.E.2d 399, 402 (Ind. 2009) (holding that the State cannot invoke fundamental error).

In *Hardley*, the State argued for the first time on appeal that the trial court "erroneously imposed concurrent sentences" even though statute required that the sentences run consecutively. *Id.* at 400. The defendant contended that the State waived this argument "because it failed to raise an objection in the trial court[.]" *Id.* at 400-01. A panel of this Court found that the issue was not waived because under the fundamental error doctrine, it could not "ignore an illegal sentence, even if the State did fail to properly preserve the issue." *Hardley v. State*, 893 N.E.2d 1140, 1145 (Ind. Ct. App. 2008)*, aff'd on other grounds by Hardley*, 905 N.E.2d 399. On transfer, our Supreme Court rejected the panel's analysis, holding that the State cannot invoke the fundamental error doctrine because "the doctrine exists to protect the fair trial rights of the defendant, not the State." *Hardley*, 905 N.E.2d at 402.

Curiously, though Trejo argues "the State cannot raise the [f]undamental [e]rror issue on appeal[,]" he nonetheless asserts that we *should* review the State's cross-appeal under Indiana Code section 35-38-1-15. Appellant's Reply Br. at 10. That statute provides, in part, that an erroneous "sentence shall be corrected after written notice is given to the convicted person." I.C. § 35-38-1-15. In *Hardley*, the Supreme Court held that this statute permits the State to challenge an erroneous sentence for the first time on appeal, but only "when the issue is a

pure question of law that does not require resort to any evidence outside the appellate record." 905 N.E.2d at 403.

[23] However, here, the State did not cite section 35-38-1-15 or *Hardley* in its Appellee's Brief, nor did the State discuss these authorities in its Cross-Reply Brief after Trejo cited both in his Reply. Instead, the State's Cross-Reply merely doubles down on fundamental error by repeating the contention that "[q]uestions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal[.]" Appellee's Cross-Reply Br. at 5 (quoting *Howell*, 97 N.E.3d at 263). Because the State did not brief section 35-38-1-15 or *Hardley*, we will not undertake the burden of doing so ourselves. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring an appellant's brief to include "the contentions of the appellant on the issues presented, supported by cogent reasoning").[7]

[24] Thus, we confine our review to the issue raised by the State on cross-appeal: whether, under the fundamental error doctrine, we may review the trial court's decision not to convict Trejo of conspiracy to commit murder notwithstanding

---

[7] As our Supreme Court stated in *Miller v. Patel*,

> The purpose of our appellate rules, [] Appellate Rule 46 in particular, is to aid and expedite review and to relieve the appellate court of the burden of searching the record and briefing the case. We will not step in the shoes of the advocate and fashion arguments on his behalf[.] . . . [The appellate courts] do **not** exist to answer every legal question that may exist in the ether; rather, we resolve concrete issues properly tested through the adversarial process: adequate and cogent briefing is required for that process to live up to its potential.

212 N.E.3d 639, 657 (Ind. 2023) (internal quotation marks omitted) (citations omitted) (emphasis in original).

the prosecutor's failure to object. Because *Hardley* made clear that the State cannot invoke the fundamental error doctrine, we do not apply it here. 905 N.E.2d at 402. And since the State has failed to present us with any other legal basis under which we can review the court's decision, we apply the general rule that the State's lack of objection "preclud[es] consideration of the issue on appeal." *Halliburton*, 1 N.E.3d at 679.

## Conclusion

We find that Trejo's murder conviction is supported by sufficient evidence and that the State waived its argument on cross-appeal that the trial court erred in failing to enter a judgment of conviction for conspiracy to commit murder. Therefore, we affirm.

Affirmed.

Altice, C.J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana