

**FILED**

Mar 13 2018, 7:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Damien Howell,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff* | March 13, 2018<br><br>Court of Appeals Case No.<br>82A05-1707-CR-1474<br><br>Appeal from the Vanderburgh<br>Superior Court<br><br>The Honorable Robert J. Pigman,<br>Judge<br><br>Trial Court Cause No.<br>82D03-1604-MR-2081 |

**Crone, Judge.**

## Case Summary

[1] Michael Damien Howell was convicted of level 2 felony voluntary manslaughter, level 6 felony criminal recklessness while armed with a deadly weapon, level 3 felony attempted robbery while armed with a deadly weapon,

and level 6 felony auto theft. On appeal, he contends that his voluntary manslaughter conviction must be reversed because an allegedly erroneous jury instruction resulted in fundamental error. He also argues that his convictions for criminal recklessness and attempted robbery violate double jeopardy principles and requests that we vacate his criminal recklessness conviction.

[2] In addition, Howell raises three challenges to his fifty-seven-year aggregate sentence. He argues that the trial court improperly enhanced his sentence for voluntary manslaughter for using a firearm in the commission of the offense. He also asserts that the trial court abused its discretion in sentencing him by finding improper aggravating factors. Finally, he argues that his sentence is inappropriate based on the nature of the offenses and his character.

[3] We conclude that the jury instructions as a whole did not mislead the jury, and therefore we affirm his voluntary manslaughter conviction. However, we conclude that his criminal recklessness conviction and his attempted robbery conviction run afoul of the constitutional protection against double jeopardy, and therefore we remand with instructions to vacate his criminal recklessness conviction. As for his sentencing challenges, we conclude that the trial court did not err in enhancing his voluntary manslaughter sentence and did not abuse its discretion in finding aggravating factors, and we conclude that he has failed to carry his burden to show that his sentence is inappropriate. Therefore, we affirm Howell's sentence.

## Facts and Procedural History

[4] In February 2016, Howell and his wife, with whom he has two children, separated. While Howell was staying with a friend, he was introduced to Beverly Karns. Howell moved in with her. Other individuals also lived with Karns including Brandon Davis and Abigail Autry. Howell and Karns used marijuana and methamphetamine together. While Howell lived with Karns, her drug use increased and she became paranoid that someone was stealing from her. Karns sometimes carried a gun in her purse. She owned a .38 Special revolver and a .22 rifle. Howell went with Karns to buy a .45 caliber handgun. Karns also bought a 9-millimeter handgun. Howell and Karns practiced shooting together. Karns began making romantic advances toward Howell, but he was not interested.

[5] In early April 2016, Karns and Howell were in her kitchen when she accidentally fired one of her guns in Howell's direction. After that, Howell moved out of Karns's residence and stayed at a hotel. In the hotel parking lot, while in a vehicle with his wife and children, Howell had a confrontation with Karns, Davis, and Autry, during which Karns accused Howell of stealing her property. During the confrontation, Autry pointed a gun at Howell and demanded that he open his trunk, Karns pointed a gun at Howell's wife, and Howell pointed a gun at Davis. Eventually, Davis persuaded Karns and Autry to back off, and Howell drove away. Later Karns called Howell to apologize.

[6] In the early morning hours of April 9, 2016, Howell was staying with Coty Clark and his wife in Vanderburgh County. Karns came to Clark's house, and

she and Howell talked and used drugs. Karns left and returned to Clark's home around 8:00 or 9:00 a.m. with some of Howell's belongings. Karns told Howell that she wanted him to move back in with her and expressed her desire to have a romantic relationship with him. Howell told her that he was not interested and that he never wanted to see her again. Karns became angry, and she and Howell argued in the middle of the living room. At some point, Karns started going through her purse. Howell saw her pull something out of her purse that flashed like it was chrome, and he heard a clinking noise of metal on metal. He thought that she was going to pull a gun on him, and he was frightened. He pulled his gun from his waistband and shot Karns in the head. Tr. Vol. 3 at 175-76. Karns fell to the floor, and Howell saw that she had an e-cigarette and not a weapon. Howell "freaked out." *Id*. at 179. Karns died because of the gunshot wound.

[7] Clark was home at the time, and Howell's father had come to visit Howell. Howell's father drove Karns's truck to the back of Clark's house, and he and Clark loaded Karns into the back of her truck. Howell gave his father a hug and removed his wedding band and gave it to his father. Howell's father told Howell to wait a minute while he pulled his car around and they would figure out what to do. By the time Howell's father retrieved his car and drove it to the back of the house, Howell had taken Karns's truck and left.

[8] While driving in Warrick County, Howell lost control of the truck. It flipped and landed in a ditch. Howell's head was injured, and he was still under the

influence of methamphetamine and marijuana. He got out of the truck, grabbed some stuff, and ran from the scene into a wooded area.

[9] A witness saw Howell flip the truck and land in the ditch, and she called 911. While she talked to the dispatcher, she saw Howell get out of the truck, grab some stuff, and run up the hill and into the woods. She went to the accident site to see if anyone else was hurt, and she found Karns's body wrapped in a carpet in the truck's camper shell, which had come off when the truck flipped.

[10] While still in Warrick County, Howell came out of the woods as Charles Scales was backing his truck out of a driveway. A witness noticed Howell standing by Scales's truck. She observed Scales briefly pause from backing out and Howell reach for the back door of Scales's truck. She saw Howell pull a gun and start firing at Scales. Scales quickly resumed backing out. Howell fired at Scales five times. One of the bullets hit Scales's leg, but he was able to drive away.[1] The witness ran to get her phone and call 911. Meanwhile, Howell noticed a Ford Explorer, saw that the keys were in the ignition, and drove it away.

[11] Law enforcement in multiple counties were dispatched, the Explorer was located, and a car chase ensued. Eventually, Howell pulled over somewhere in Dubois County and surrendered to police. In Vanderburgh County, the State charged Howell with the murder of Karns and sought a sentencing enhancement for his use of a firearm in the commission of the offense. The

---

[1] Scales survived the encounter but died before trial from unrelated causes.

State also charged Howell with level 1 felony attempted murder of Scales, level 3 felony attempted robbery of Scales while armed with a deadly weapon, and level 6 felony auto theft. Howell filed a motion to dismiss the counts for the offenses that were committed in Warrick County. The trial court denied his motion to dismiss, finding that his Warrick County offenses for purposes of venue and/or joinder[2] were "part of the series of events that constituted the commission" of the offenses committed in Vanderburgh County. Appellant's App. Vol. 2 at 44.

[12] A jury found Howell guilty of level 2 felony voluntary manslaughter of Karns as a lesser-included offense of murder, guilty of level 6 felony criminal recklessness as a lesser-included offense of attempted murder of Scales, and guilty of attempted robbery and auto theft as charged. Howell admitted to using a firearm in the commission of voluntary manslaughter.

[13] In sentencing Howell, the trial court found the following aggravating factors: Scales was injured and was over sixty-five years old; Howell's history of substance abuse; Howell's continued abuse of drugs after completing a forensic diversion program; children were present when he committed voluntary manslaughter; his attempted disposal of Karns's body; and police were forced to engage in a high-speed chase before Howell eventually surrendered. *Id.* at 187-88. The trial court found no mitigating circumstances. The trial court

---

[2] The specific basis for Howell's motion to dismiss is uncertain because neither his motion to dismiss nor the supporting and opposing authorities the parties submitted to the trial court are in the record.

sentenced Howell as follows: twenty-five years for his voluntary manslaughter conviction, plus fifteen years for using a firearm in its commission; two years for his criminal recklessness conviction and fifteen years for his attempted robbery conviction, to be served concurrent to each other but consecutive to his sentence for voluntary manslaughter; and two years for his auto theft conviction, to be served consecutive to the other counts, for an aggregate sentence of fifty-seven years. This appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The jury instruction on voluntary manslaughter did not result in fundamental error.

[14] Howell contends that his conviction for voluntary manslaughter, the lesser-included offense of his murder charge, must be reversed because the trial court erred in giving Final Instruction 9 ("Instruction 9"),[3] which addressed lesser-included offenses as follows:

> *If you find that the State has failed to prove any one of the essential elements of the charged crimes of Murder* and Attempted Murder, *you should then decide* whether the State has proved beyond a reasonable doubt all elements of the included crimes of *Voluntary Manslaughter* and Criminal Recklessness which have been defined for you.

---

[3] Although Howell was charged with the attempted murder of Scales and was found guilty of the lesser-included offense of criminal recklessness, he does not challenge his criminal recklessness conviction on this basis.

If the State failed to prove each of the essential elements of the included crime beyond a reasonable doubt, the defendant should be found not guilty. If the State did prove each of the elements of the included crime beyond a reasonable doubt, you should find the defendant guilty of the lesser included crime. You must resolve reasonable doubt in favor of the accused downward from the specific crime charged through the included offenses. You may not find the defendant guilty of more than one of the offenses. Where there is a reasonable doubt existing in your minds as to which degree of an offense the defendant may be guilty of, he must be convicted of the lower degree only. If there is reasonable doubt as to all, then you must find the defendant not guilty.

*Id*. at 92 (emphases added).

[15] In reviewing Howell's contention, we observe that

[t]he manner of instructing a jury is left to the sound discretion of the trial court. We will not reverse the trial court's ruling unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. Jury instructions must be considered as a whole and in reference to each other, and even an erroneous instruction will not constitute reversible error if the instructions, taken as a whole, do not misstate the law or otherwise mislead the jury.

*Quiroz v. State*, 963 N.E.2d 37, 41 (Ind. Ct. App. 2012) (citations omitted).

[16] Howell acknowledges that he failed to object to Instruction 9, and thus seeks to win reversal by claiming that it constitutes fundamental error. *See Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014) ("Failure to object at trial waives an

issue on appeal unless the appellant can show fundamental error.")  The fundamental error exception to the contemporaneous objection rule is

> extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.  The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process.  This exception is available only in egregious circumstances.

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (citations and quotation marks omitted).

[17]  Specifically, Howell contends that Instruction 9 erroneously instructs the jury that it "should" decide whether he was guilty of the lesser-included offense of voluntary manslaughter "[i]f you find that the State has failed to prove any one of the essential elements of the charged crime[] of Murder."  Appellant's App. Vol. 2 at 92.  Generally, conviction of a lesser-included offense must be supported by proof of some, but not all, of the elements of the charged crime. *Coy v. State*, 999 N.E.2d 937, 943 (Ind. Ct. App. 2013).  However, voluntary manslaughter is different.

[18]  Indiana Code Section 35-42-1-3 defines voluntary manslaughter as follows:

> (a) A person who knowingly or intentionally:
>
>> (1) kills another human being;

...

> while acting under sudden heat commits voluntary manslaughter, a Level 2 felony.
>
> (b) *The existence of sudden heat is a mitigating factor* that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

(Emphasis added.)

[19]    "Voluntary manslaughter is a lesser included offense of murder, distinguishable by the factor of a defendant having killed, while acting under sudden heat."[4] *Evans v. State*, 727 N.E.2d 1072, 1077 (Ind. 2000). To obtain a conviction for voluntary manslaughter, the State must prove *all* the elements of murder and *disprove* the existence of sudden heat if the defendant places sudden heat in issue. *Id.*; *see also Dearman v. State*, 743 N.E.2d 757, 761 (Ind. 2001) ("[T]he defendant bears no burden of proof with respect to sudden heat, but only bears the burden of placing the issue in question where the State's evidence has not done so."). Here, Instruction 9 incorrectly stated that if the State did *not* prove all the elements of murder, the jury should then decide whether Howell committed voluntary manslaughter. Nevertheless, we reject Howell's contention that Instruction 9 made a fair trial impossible.

---

[4] To establish sudden heat, the defendant must show "sufficient provocation to engender ... passion." *Johnson v. State*, 518 N.E.2d 1073, 1077 (Ind. 1988). Sufficient provocation is demonstrated by "such emotions as anger, rage, sudden resentment, or terror [that are] sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Id.*

[20]    As previously mentioned, "an erroneous instruction will not constitute reversible error if the instructions, taken as a whole, do not misstate the law or otherwise mislead the jury." *Quiroz*, 963 N.E.2d at 41. Here, the trial court also provided Final Instruction Number 3 ("Instruction 3"), which provided,

> The crime of murder is defined by law as follows:
>
> A person who knowingly or intentionally kills another human being, commits murder a felony.
>
> Included in the charge in this case is the crime of voluntary manslaughter, which is defined by law as follows:
>
> A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Level 2 Felony.
>
> Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.
>
> Before you may convict [Howell] on Count 1 [(murder of Karns)] the State must have proved each of the following beyond a reasonable doubt:
>
> 1. [Howell]
>
> 2. Knowingly or intentionally
>
> 3. Killed

4. Beverly Karns

5. And [Howell] was not acting under sudden heat.

If the State failed to prove each of the elements 1 through 4 beyond a reasonable doubt, you must find the Defendant not guilty of murder as charged in Count 1.

If the State did prove each of the elements 1 through 4 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5[5] you may find the Defendant guilty of voluntary manslaughter, a Level 2 Felony, a lesser included offense of Count 1.

If the State did prove each of the elements 1 through 5 beyond a reasonable doubt, you may find the Defendant guilty of murder, a Felony, as charged in Count 1.

Appellant's App. Vol. 2 at 85.

[21] Howell concedes that Instruction 3 correctly states the law, but argues that it did not cure Instruction 9, citing *Roberson v. State*, 982 N.E.2d 452 (Ind. Ct. App. 2013). However, *Roberson* does not support Howell's argument. In that case, the issue was whether Roberson's trial counsel provided ineffective assistance in failing to object to jury instructions. The *Roberson* court concluded that the trial court erroneously instructed the jury that "[i]f the State proves

---

[5] To be clear, although Instruction 3 refers to "element 5", the existence of sudden heat is a mitigating factor, not an element. *Brantley v. State*, No. 18S-CR-98, 2018 WL 915130, at *6 (Ind. Feb. 16, 2018). "However, once a defendant places sudden heat into issue, the State then bears the burden of negating the presence of sudden heat beyond a reasonable doubt." *Evans*, 727 N.E.2d at 1077.

[Roberson] guilty of Murder, you *must* not consider the included crimes." *Id*. at 458 (citation omitted). In addition, the jury received another instruction, which likewise provided, "If you find that [Roberson] is not guilty of the crime of Murder ..., you may then consider whether [Roberson] is guilty of the included offense of Voluntary Manslaughter...." *Id*. at 460 (citation omitted). The *Roberson* court observed that "the jury instructions *as a whole* indicated to the jury that it could only consider convicting Roberson of voluntary manslaughter if it first found him not guilty of murder." *Id*. (emphasis added). The *Roberson* court concluded that trial counsel's failure to object to the jury instructions constituted ineffective assistance. *Id*. at 461.

[22] Here, Instruction 3 correctly informed the jury of the definitions of murder and voluntary manslaughter, that sudden heat is a mitigating factor that reduces murder to voluntary manslaughter, and that the State had the burden of proving that Howell was not acting under sudden heat, and Instruction 3 laid out specifically the circumstances under which the jury was required to find him not guilty of murder, guilty of voluntary manslaughter, or guilty of murder based on the State's success or failure to prove the required elements. Therefore, the instructions taken as a whole did not mislead the jury. As such, Instruction 9 did not result in reversible error, let alone fundamental error. Therefore, we affirm Howell's voluntary manslaughter conviction.

## Section 2 – Howell's convictions for attempted robbery and criminal recklessness violate the Indiana Constitution's double jeopardy provision.

[23] Howell asserts that his convictions for both attempted robbery with a deadly weapon and criminal recklessness while armed with a deadly weapon violate the Indiana Constitution's prohibition against double jeopardy and requests that we vacate his criminal recklessness conviction. "Questions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal, or even by this court *sua sponte*. Whether convictions violate double jeopardy is a pure question of law, which we review de novo." *Street v. State*, 30 N.E.3d 41, 46 (Ind. Ct. App. 2015), *trans. denied*. The Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. "Indiana's Double Jeopardy Clause ... prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*.

[24] Howell's double jeopardy challenge is based on the actual evidence used to convict him. Under the "actual evidence" test, the actual evidence presented at trial is examined to determine whether each challenged offense was established

by separate and distinct facts. *Id*. at 53. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all the essential elements of a second challenged offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). Our supreme court has explained,

> [A] reasonable possibility that the jury used the same facts to reach two convictions requires substantially more than a logical possibility. The reasonable possibility standard fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts. The existence of a reasonable possibility turns on a practical assessment of whether the fact finder may have latched on to exactly the same facts for both convictions. We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel

*Garrett v. State*, 992 N.E.2d 710, 720 (Ind. 2013) (citations, quotation marks, and brackets omitted).

[25] To convict Howell of level 3 felony attempted robbery while armed with a deadly weapon, the State was required to prove that he knowingly or intentionally engaged in conduct that constituted *a substantial step* toward taking property from Scales or from the presence of Scales by using or threatening the

use of force on Scales while armed with a deadly weapon.[6] Ind. Code §§ 35-42-5-1 (robbery) and 35-41-5-1 (attempt). To convict Howell of level 6 felony criminal recklessness while armed with a deadly weapon, the State was required to prove that he recklessly, knowingly, or intentionally *performed an act that created a substantial risk of bodily injury* to Scales while armed with a deadly weapon. Ind. Code § 35-42-2-2. Specifically, Howell asserts that the actual evidence that established the substantial step for the attempted robbery charge is the same evidence that established that he performed an act that created a substantial risk of bodily injury to Scales, namely the evidence that he discharged a firearm into a vehicle occupied by Scales and/or in his direction. We agree.

[26] A comparison of the charging informations and the jury instructions supports Howell's assertion. In charging Howell with attempted robbery with a deadly weapon, the State alleged that Howell "engag[ed] in conduct that constituted *a substantial step* toward the commission of the crime of Robbery, by knowingly or intentionally attempting to take the property of [Scales] from or from the presence of [Scales], *by discharging a firearm into a vehicle occupied by [Scales] and/or in the direction of [Scales]*." Appellant's App. Vol. 2 at 54 (emphases added). The State did not charge Howell with criminal recklessness, but because the jury convicted Howell of criminal recklessness as a lesser-included

---

[6] Robbery is a level 5 felony and is raised to a level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant. Ind. Code § 35-42-5-1(b).

offense of attempted murder, we consider the charging information for attempted murder. In the charging information, the State alleged that Howell "knowingly or intentionally *discharg*[*ed*] *a firearm into a vehicle occupied by [Scales] and/or in the direction of [Scales]* with the intent to kill, which conduct constituted *a substantial step* toward the commission of said crime of Murder." *Id*. at 38 (emphases added). Similarly, the jury was instructed that to convict Howell of attempted murder, the State must have proved that he, acting with the specific intent to kill Scales, "[d]id knowingly or intentionally *discharge a firearm into a vehicle occupied by* [*Scales*] *and/or in the direction of* [*Scales*] with the intent to kill[,] which [] conduct constituted *a substantial step* toward the commission of the intended crime of killing [Scales]." *Id*. at 86 (emphases added). Therefore, the charging information for attempted robbery, the charging information for attempted murder, and the jury instruction for attempted murder are based on Howell's conduct of discharging a firearm.[7]

[27] Turning to closing argument, we note that the prosecutor told the jury that she would address the attempted robbery charge and the attempted murder charge "together." Tr. Vol. 4 at 131. The prosecutor argued,

> [Howell] had already driven [Karns's] vehicle, had a wreck, took off running to continue his escape and now he needed another vehicle and [Scales] was in the way of him taking off in [Scales's]

---

[7] The jury instruction for attempted robbery did not specify what conduct constituted the substantial step. That instruction advised the jury that to convict Howell of attempted robbery, the State must have proved that he knowingly or intentionally engaged in conduct constituting a substantial step toward committing robbery while armed with a deadly weapon. Appellant's App. Vol. 2 at 88.

truck. [Howell] admitted to shooting [] Scales because he got angry. He shot five rounds at [Scales] and [Scales] was lucky that only one of those rounds struck him. [Howell] wanted that truck to continue his escape and [Scales] was in the way and he had to shoot at [Scales] so that he could get that truck.

*Id*. at 132. Thus, consistent with the charging informations and jury instruction, closing argument reflects that the substantial step to support both attempted robbery and attempted murder was based on Howell's discharging a firearm into a vehicle while Scales was in it and/or in Scales's direction.

[28] Howell's conviction for criminal recklessness, as a lesser-included offense, was based on the charging information and jury instructions for attempted murder. The jury was instructed that "[i]f you find that the State failed to prove any one of the essential elements of the charged crime of Attempted Murder as set out in this count you should then decide whether the State has proved beyond a reasonable doubt all elements of the included crime of Criminal Recklessness." Appellant's App. Vol. 2 at 86. To convict Howell of criminal recklessness, the jury was instructed that the State was required to prove that he recklessly, knowingly, or intentionally "[p]erform[ed] an act that created a substantial risk of bodily injury to Scales" while armed with a deadly weapon. *Id*. at 87. Because the criminal recklessness conviction was based on the charges and jury instructions for the attempted murder charge, the act that created a substantial risk of bodily injury to Scales refers to Howell's conduct in discharging a firearm into a vehicle occupied by Scales and/or in the direction of Scales.

That is the same conduct that constitutes the substantial step that supports Howell's attempted robbery conviction.

[29]  The State argues that the crimes of attempted robbery and criminal recklessness each include

> evidence or facts not essential to the other. The attempted taking of property from Scales supports the attempted robbery, but is not [an] element of the other crime. Further, in order to convict Howell of criminal recklessness, the jury had to find that he performed an act that created a substantial risk of bodily injury to Scales, which it did not need to find in order to convict Howell of attempted robbery.

Appellee's Br. at 17. But the State's argument merely echoes the obvious point that the *statutory* elements of the two crimes are different. The State fails to discuss the actual evidence that the jury might have reasonably relied on to decide that the State proved these statutory elements. We conclude that based on the charging informations, jury instructions, and closing arguments, there is a reasonable possibility that the evidentiary facts used to establish that Howell took a substantial step toward committing robbery may also have been used to establish that Howell performed an act that created a substantial risk of bodily injury to Scales. *See Stewart v. State*, 866 N.E.2d 858, 864-65 (Ind. Ct. App. 2007) (concluding that there was reasonable possibility that trial court used the same evidence—Stewart fired at or into occupied vehicle—to establish all elements of both attempted battery and criminal recklessness): *Rutherford v. State*, 866 N.E.2d 867, 871 (Ind. Ct. App. 2007) (same); *but see Lee v. State*, 892

N.E.2d 1231, 1237 (Ind. 2008) (concluding that convictions of burglary and attempted armed robbery did not violate double jeopardy where there was distinct evidence that Lee barged into a residence to support the burglary conviction and evidence that he made threats to establish the substantial step of attempted armed robbery). Accordingly, Howell's convictions for attempted robbery and criminal recklessness violate the prohibition against double jeopardy.

[30] "When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated." *Richardson*, 717 N.E.2d at 54 (citation omitted). Here, even if we reduced the attempted robbery to a level 5 felony, the substantial step element, and thus the double jeopardy violation, would remain. Therefore, because the violation cannot be eliminated by reducing either conviction to a less serious form of the same offense, we remand with instructions to vacate Howell's conviction for criminal recklessness.

## Section 3 – The trial court did not err in enhancing Howell's sentence for voluntary manslaughter pursuant to the Firearm Enhancement Statute.

[31] Howell argues that the trial court improperly applied Indiana Code Section 35-50-2-11 ("the Firearm Enhancement Statute") to enhance his sentence for voluntary manslaughter for using a firearm in the commission of the offense. His argument raises a question of statutory interpretation.

> When interpreting a statute, our primary goal is to fulfill the legislature's intent. [T]he best evidence of that intent is the statute's language. If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it does say and what it does not say.

*Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016) (citations and quotation marks omitted).

[32] The Firearm Enhancement Statute provides as follows:

> (b) As used in this section, "offense" means:
>
> > (1) a felony under IC 35-42 that resulted in death or serious bodily injury;
> >
> > (2) kidnapping; or
> >
> > (3) criminal confinement as a Level 2 or Level 3 felony.
>
> ….
>
> (d) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense.
>
> ….
>
> (g) If the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a

reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense under subsection (d), the court may sentence the person to an additional fixed term of imprisonment of between five (5) years and twenty (20) years.

....

(i) *A person may not be sentenced under subsections (g) and (h)*[8] *for offenses, felonies, and misdemeanors comprising a single episode of criminal conduct.*

(Emphasis added).

[33]   Howell does not dispute that his voluntary manslaughter conviction qualifies as an "offense" for purposes of the Firearm Enhancement Statute pursuant to subsection (b). However, he argues that pursuant to subsection (i), the statute cannot be applied to him because his offenses constitute a single episode of criminal conduct. According to Howell, his sentence for voluntary manslaughter may not be enhanced because that offense and his offenses for attempted robbery and auto theft comprise a single episode of criminal conduct. Howell interprets subsection (i) to bar a sentencing enhancement for an offense when that offense was committed with other offenses comprising a single episode of criminal conduct. We disagree.

---

[8] Subsection (h) deals with pointing and discharging a firearm in the commission of felonies and misdemeanors against police officers.

[34]     By its plain language, subsection (i) states that a person may not be sentenced under subsection (g) for offense*s*—plural—comprising a single episode of criminal conduct. Thus, subsection (i) prohibits a trial court from imposing a sentence enhancement on more than one conviction where a defendant is convicted of multiple offenses comprising a single episode of criminal conduct, even if more than one of the offenses would otherwise be eligible for a sentencing enhancement. To read subsection (i) as Howell suggests would lead to the absurd result that a person who was convicted of committing a single qualifying offense, say voluntary manslaughter, would be subject to a sentencing enhancement, but a person who committed voluntary manslaughter as part of an episode of criminal conduct could not be subject to a sentencing enhancement. Accordingly, we conclude that subsection (i) simply means that not more than one offense in a single episode of criminal conduct is subject to the sentencing enhancement. Thus, even if Howell's offenses can be said to comprise a single episode of criminal conduct, the Firearm Enhancement Statute permits a sentencing enhancement of one of his offenses (as long as that offense meets the definition provided in subsection (b), and as noted, there is no dispute that voluntary manslaughter qualifies).

[35]     That said, even if we were to accept Howell's interpretation of subsection (i), we are unpersuaded by his argument that his offenses constitute a single episode of criminal conduct. He claims that the trial court has already found that his offenses comprise a single episode of criminal conduct because in denying his motion to dismiss the offenses committed in Warrick County, the trial court

found that his Warrick County offenses were "part of the series of events that constituted the commission" of the offenses committed in Vanderburgh County. Appellant's App. Vol. 2 at 44. Howell asserts that the trial court's language meets the definition of "episode of criminal conduct" as defined in the statute governing consecutive and concurrent terms, Indiana Code Section 35-50-1-2. His argument contains two underlying assumptions: (1) that Section 35-50-1-2(b)'s definition of episode of criminal conduct applies to the Firearm Enhancement Statute; and (2) that the standard that the trial court applied to determine whether his crimes should be prosecuted together is the same standard that applies for purposes of sentencing under Section 35-50-1-2. We address each assumption in turn.

[36] Subsection (i) of the Firearms Enhancement Statute provides, "A person may not be sentenced under subsections (g) and (h) for offenses, felonies, and misdemeanors comprising a single episode of criminal conduct." The Firearm Enhancement Statute does not define a single episode of criminal conduct. The only definition of episode of criminal conduct in Title 35, Criminal Law and Procedure, is provided by Section 35-50-1-2-(b), which reads, "As used *in this section*, 'episode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance."[9] (Emphasis added). The Firearm Enhancement Statute is not in that section, but rather in

---

[9] Section 35-31.5-2-121 unhelpfully provides, "'Episode of criminal conduct', for purposes of IC 35-50-1-2, has the meaning set forth in IC 35-50-1-2(b)." We also note that Indiana Code Sections 35-38-9-2 and -5 refer to "the same episode of criminal conduct" but do not cite the definition in Section 35-50-1-2(b) or provide an independent definition.

Chapter 35-50-2. Nor does Subsection (i) of the Firearm Enhancement Statute refer to 35-50-1-2(b). However, another section of Chapter 35-50-2, Section 35-50-2-1.3 ("Advisory sentence"), refers to "an episode of criminal conduct, in accordance with IC 35-50-1-2." In addition, "'[s]tatutes relating to the same general subject matter are in pari materia [on the same subject] and should be construed together so as to produce a harmonious statutory scheme.'" *Taylor v. State*, 7 N.E.3d 362, 365 (Ind. Ct. App. 2014) (quoting *State v. Vankirk*, 955 N.E.2d 765, 767 (Ind. Ct. App. 2011), *trans. denied* (2012)). Because both Section 35-50-1-2 and the Firearm Enhancement Statute deal with sentencing, we conclude that the definition of episode of criminal conduct in Section 35-50-1-2(b) is applicable to the Firearm Enhancement Statute.

[37] As for the trial court's finding that Howell's Warrick County offenses were "part of the series of events that constituted the commission" of the Vanderburgh County offenses, we are unpersuaded that it is equivalent to a finding that Howell's offenses comprise a single episode of criminal conduct as defined in Section 35-50-1-2-(b). Appellant's App. Vol. 2 at 44. While Section 35-50-1-2-(b) describes an episode of criminal conduct in part as "offenses or a connected series of offenses," it requires more than that the offenses be merely connected; the offenses must be "closely related in time, place, and circumstance." We find it instructive that this Court has previously declined to treat the analysis of crimes for joinder purposes the same as that for sentencing. In *Slone v. State*, 11 N.E.3d 969, 973 (Ind. Ct. App. 2014), another panel of this Court rejected the defendant's argument that the State's successful effort to join

two causes for trial proved that his crimes arose out of an episode of criminal conduct. In doing so, the *Slone* court observed,

> We have previously stated that while the phrase "episode of criminal conduct" may involve somewhat similar language to Indiana Code section 35-34-1-9(a), "we decline to conflate the 'episode of criminal conduct' analysis for sentencing defendants with the 'single scheme or plan' analysis for charging them." *State v. Dixon*, 924 N.E.2d 1270, 1273 n.4 (Ind. Ct. App. 2010) (citing *Deshazier v. State*, 877 N.E.2d 200, 213 n.12 (Ind. Ct. App. 2007) (declining to apply "single scheme or plan" analysis to consecutive sentencing case), *trans. denied* ).

*Id*. Accordingly, the trial court's denial of Howell's motion to dismiss is not conclusive as to whether his offenses constitute a single episode of criminal conduct for purposes of sentencing.

[38] Turning to the merits of Howell's claim that his offenses comprise a single episode of criminal conduct, we reiterate that an "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). "Whether certain offenses constitute a 'single episode of criminal conduct' is a fact-intensive inquiry." *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002).

> In determining whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes. Additional guidance on the question can be obtained by considering whether the alleged conduct was so closely related in time, place, and circumstance that a complete account of one

charge cannot be related without referring to the details of the other charge.

*Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008) (citations, quotation marks, and brackets omitted).

[39] Here, it is undisputed that the offenses were not committed simultaneously or contemporaneously. In addition, they were not closely related in place; Howell committed voluntary manslaughter in Vanderburgh County, but committed attempted robbery and auto theft in Warrick County. We also cannot say that they are closely related in circumstance. Howell shot Karns because they were arguing, he knew she owned guns, and he thought she was drawing a gun. After Coty and Howell's father loaded Karns's body into her truck, Howell drove the truck away. He testified that he drove in the direction of his wife's home because he wanted to see her and his children again before he called the police. Tr. Vol. 3 at 183. However, he wrecked the truck. He testified that he was hurt and scared and was still under the influence of methamphetamine and marijuana. *Id*. at 185. He fled the scene and ran into the woods. When he came out of the woods, he encountered Scales. When he was unable to take Scales's truck, he stole the Explorer. Howell's attempt to rob Scales's truck and his theft of the Explorer appear to flow from his vehicle accident and use of drugs. Although the attempted robbery and theft may be closely related in time, place, and circumstance, those two offenses are not closely related in time, place, and circumstance to the shooting of Karns. As such, we conclude that Howell's voluntary manslaughter offense is not part of a single episode of

criminal conduct for purposes of the Firearm Enhancement Statute. Accordingly, we conclude that the trial court did not err in enhancing Howell's sentence for voluntary manslaughter.

## Section 4 – The trial court did not abuse its discretion in finding aggravating factors.

[40] Howell asserts that the trial court abused its discretion in sentencing him by finding invalid aggravating factors. We note that sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. at 491. A trial court abuses its discretion during sentencing by: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490-91.

[41] Specifically, Howell claims that the trial court improperly found as aggravating factors that he lacked remorse and that he intended to harm Scales. At the sentencing hearing, the trial court considered Howell's expressions of remorse and concluded as follows:

> There's nothing about anything you did from the moment you pulled that trigger that suggests you had even an ounce of remorse for what you did. …. I have no idea today whether any of your statements of remorse [are] genuine or not. I hope they are. I hope sincerely that you have found personal redemption for the horrific thing that you've done here but I can't — I will not base my judgment on that because you're the only one that can possibl[y] know that with any degree of certainty. Therefore the Court finds no mitigating circumstance.

Tr. Vol. 4. at 227-28. Howell contends that the first part of this quote suggests that the trial court considered lack of remorse as an aggravating factor. We find nothing in the trial court's statement that suggests that it considered lack of remorse as an aggravating factor. Further, lack of remorse was not listed as an aggravating factor in the written sentencing order.

[42] As for Howell's claim that the trial court found that he intended to harm Scales, the trial court stated,

> I have no doubt that you intended to harm Mr. Scales or at a minimum, acted with a callous disregard of whether you were going to harm him or not when you fired into his truck in an effort to get control of that truck so you could evade responsibility for this act.

*Id*. at 227. Howell asserts, "Contrary to the trial court's statement, the only conclusion to be drawn from the jury's verdict was that [Howell] *did not intend* to harm Scales when he fired into his vehicle." Appellant's Br. at 43. We disagree. The jury acquitted Howell of the attempted *murder* of Scales.

[43] Further, our supreme court has explained,

> When evaluating the nature of the offense, the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors. The trial court must then detail why the defendant deserves an enhanced sentence under the particular circumstances. Generally, this aggravator is thought to be associated with particularly heinous facts or situations.

*McElroy v. State*, 865 N.E.2d 584, 589-90 (Ind. 2007) (citations and quotation marks omitted).  Here, Howell did not merely threaten Scales or use physical force to compel Scales to relinquish control of his truck, he fired at Scales five times at close range.  That is significantly more than required to support a conclusion that he intended to harm Scales.  We conclude that the trial court did not abuse its discretion in sentencing Howell.

## Section 5 – Howell has failed to meet his burden to show that his sentence is inappropriate.

[44]    Howell asks us to reduce his fifty-seven-year aggregate sentence[10] pursuant to Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result in each case.  *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).  "We do not look to determine if the sentence was appropriate; instead we look

---

[10]  Although we vacate Howell's conviction for criminal recklessness, it will not affect his aggregate sentence because the sentence for that conviction was concurrent to his sentence for attempted robbery.

to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In addition, as we assess the nature of the offense and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Howell has the burden to show that his sentence is inappropriate. *Anglemyer*, 868 N.E.2d at 490.

[45]     Turning first to the nature of the offenses, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). Howell's fifty-seven-year aggregate sentence comprises three consecutive sentences, all of which are above the advisory sentence. Howell received a twenty-five-year sentence for level 2 felony voluntary manslaughter plus a fifteen-year firearm

enhancement, a fifteen-year sentence for level 3 felony attempted robbery, and a two-year sentence for level 6 felony auto theft. The penalty for a level 2 felony is ten to thirty years, with an advisory sentence of seventeen and a half years. Ind. Code § 35-50-2-4.5. The penalty for a level 3 felony is three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). The penalty for a level 6 felony is six months to two and a half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b).

[46] Howell argues that the nature of the offenses shows that he is not a cold-blooded killer, but a person who made tragic mistakes based on fear and panic. Although the jury acquitted him of the murder and attempted murder charges, Howell's crimes were nevertheless brutal and he showed no restraint. He shot a woman in the head and then fled with her body. After he wrecked her vehicle, he attempted to rob another victim of his vehicle by firing multiple shots at him resulting in bodily injury to the victim's leg. He then stole a third victim's vehicle. The existence of multiple crimes and victims justifies imposition of enhanced and consecutive sentences "to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003). On balance, we cannot say that Howell has shown compelling evidence portraying the nature of the offenses in a positive light.

[47] As for Howell's character, he argues that he has a "minor" criminal history of two felony convictions both related to substance abuse and that the current offenses mark a substantial departure from his character. However, his

substance abuse has a long history and he was under the influence of drugs when committing the current offenses. We conclude that Howell has failed to carry his burden to show that his sentence is inappropriate based on the nature of the offenses and his character. Accordingly, we affirm his aggregate sentence.

## Conclusion

[48] Based on the foregoing, we remand with instructions to vacate Howell's conviction for level 6 felony criminal recklessness. In all other respects, we affirm.

[49] Affirmed and remanded.

Robb, J., and Bradford, J., concur.