## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 06 2020, 9:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jared Michel Thomas
JMT Law, LLC d/b/a Thomas Law
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles E. Johnson, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 6, 2020

Court of Appeals Case No.
19A-CR-1120

Appeal from the
Vanderburgh Circuit Court

The Honorable
David D. Kiely, Judge

Trial Court Cause No.
82C01-1804-F3-2506

**Kirsch, Judge.**

[1] Following his convictions for sexual battery[1] as a Level 6 felony and battery resulting in injury[2] as a Level 5 felony, Charles E. Johnson, Jr. ("Johnson") was sentenced to concurrent sentences of two-and-a-half years and six years, resulting in an aggregate sentence of six years. Contending his sentence is inappropriate, he now appeals.

[2] We affirm.

## Facts and Procedural History

[3] Since 2012, Johnson and T.Z. had been in an on-and-off romantic relationship. On April 5, 2018, T.Z. and Johnson made plans for Johnson to pick her up and take her to his home. They had been in an "off" stage of their relationship, but T.Z. believed that she and Johnson would be discussing whether they should resume their relationship.

[4] Johnson picked up T.Z. and drove her to his home. There, both went to the bedroom, and Johnson sat down and turned on pornography. T.Z. sat on the bed and attempted to fall asleep.

[5] T.Z. fell asleep for a moment, but Johnson woke her up by tapping her on the shoulder and stating, "Come over here and get me hard." *Tr. Vol. 2* at 34-35. T.Z. told Johnson "no" and attempted to get up and grab her bag so she could

---

[1] *See* Ind. Code § 35-42-4-8.

[2] *See* Ind. Code § 35-42-2-1.

leave. *Id*. at 35. Johnson struck T.Z. in the eye with his fist, fracturing her eye socket. *Id*. at 14, 35. He told T.Z. "that [she] wasn't gonna leave. That [she] was gonna do what he said." *Id*. at 35.

[6] T.Z. stopped fighting back and began to remove her clothes because Johnson told her to do so. Johnson attempted to have intercourse with T.Z., but his penis was not erect, and he could not insert it. He ordered T.Z. to perform oral sex on him, but T.Z. could not comply because her face was too swollen from Johnson's punches. Johnson then dragged T.Z. by her neck into the center of the room, wrapped a rag around the vacuum cleaner hose, secured the rag with a condom and repeatedly shoved the vacuum cleaner hose into T.Z.'s vagina.

[7] T.Z. then attempted to leave, but Johnson grabbed her and began hitting the back of her head against the steps. He then took T.Z. back to the bedroom and again tried to have intercourse with her. He again punched her in the face and attempted to force a pipe into her mouth, breaking her teeth in the process. T.Z.'s face was bleeding profusely, and Johnson handed her a rag and told her to clean her face off with it. After she wiped off the blood, Johnson again attempted to force T.Z. to perform oral sex on him.

[8] Several hours passed, and in the early morning hours, T.Z. told Johnson that he had to let her go because she had a probation appointment that morning. T.Z. drove herself home, and her mother and grandfather drove her to the hospital to receive treatment for her injuries.

[9] After T.Z. reported her assault at the hospital, Johnson gave a statement to Detective Stacy Spalding ("Detective Spalding"). He reported that he and T.Z. had a romantic and sexual relationship and that he "treat her like scum, dog shit." *Tr. Vol. 2* at 90. He also reported that he has told T.Z. that he will "kill [her]" and that "anything [he] ask[s] for [she] better always be there[.]" *Id*. He told Detective Spalding that T.Z. was "supposed to come through th[e] hallway takin' her clothes off," and "[t]here's no such thing as she doesn't want it." *Id*. at 92. Johnson also told Detective Spalding that any time T.Z. came to his home, she was expected to have intercourse and could not change her mind because "supply and demand, cash and carry." *Id*. at 114.

[10] On April 9, 2018, the State charged Johnson with Level 3 felony rape, Level 3 felony criminal confinement, Level 5 felony battery resulting in serious bodily injury, and Level 6 felony strangulation. *Appellant's App. Vol. II* at 45-46. After a jury trial, Johnson was found guilty of Level 6 felony sexual battery, as a lesser included offense of rape, and Level 5 felony battery resulting in serious bodily injury. At sentencing, Johnson did not offer any mitigating circumstances for the trial court's consideration, asking only that the trial court make "a minute [entry] regarding any DOC sentence [requesting] . . . some form of substance abuse treatment or evaluation as soon as he arrives." *Tr. Vol. 2* at 168. In addition to the executed sentence, the State requested restitution for T.Z.'s medical bills including $7,214 to cover the out-of-pocket portion of her medical bills for her fractured eye socket and the laceration in her eyebrow that Johnson had caused. *Id*. at 169. In addition, the State requested additional restitution of $5,786 to cover the expense of

fixing T.Z.'s broken teeth which T.Z. had not been able to get fixed at the time of sentencing because she could not afford it. *Id*. at 169-70.

[11] The trial court did not address the restitution request in its sentencing order. The trial court stated that it found Johnson's criminal history, which crossed state lines and included a federal weapons offense, to be an aggravating circumstance. *Id*. at 170-71. The court sentenced Johnson to six years for his Level 5 felony conviction and two-and-a-half years for his Level 6 felony conviction and ordered the sentences to run concurrently to each other for an aggregate sentence of six years executed. *Id*. at 171. Johnson now appeals.

## Discussion and Decision

[12] An appellate court may revise a statutorily authorized sentence if "after due consideration of the trial court's decision," the court finds the sentence imposed to be inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The principal role of appellate review is to "leaven the outliers" and not to achieve a perceived "correct" result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008); *Howell v. State*, 97 N.E.3d 253, 271 (Ind. Ct. App. 2018). The question on appeal is "whether the sentence imposed is inappropriate," not whether a different sentence would be a better result. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

[13] The trial court's sentencing decision will stand "unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's

character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on Johnson to persuade the court that his sentence is inappropriate as to both the nature of his offense and his character. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006); Wheeler *v. State*, 95 N.E.3d 149, 160 (Ind. Ct. App. 2018).

[14] Johnson argues that his six-year aggregate sentence is inappropriate in light of the nature of the offense and the character of the offender. He first asserts that the trial court erred in failing to find any mitigating factors, claiming that the trial court did not consider any mitigating factors like his prior drug habits and addictions. He also contends that although he had a prior criminal history, he should not have been sentenced to the maximum because he is not the "worst of the worst offenders," especially when his criminal history shows that he has severe issues with narcotics. *Appellant's Br*. at 11. Johnson further claims that, as to the nature of the offense, the injuries sustained are ones that, as shown in the restitution requested, can be remedied.

[15] In determining whether a sentence is appropriate as to the nature of the offense, the starting point is the advisory sentence. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). Generally, the maximum sentence is given to the "worst of the worst" offenses. *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011). For his Level 5 felony conviction, Johnson faced a sentencing range of one to six years with an advisory sentence of three years. *See* Ind. Code § 35-50-2-6(b). For his Level 6 felony conviction, Johnson faced a sentencing range of six months to two-and-a-half years with an advisory sentence of one year. *See* Ind. Code § 35-

50-2-7(b). For his two offenses, Johnson faced a maximum aggregate sentence of eight-and-a-half years. The trial court gave Johnson the maximum sentence for each individual offense but ran the sentences concurrently for a below-the-maximum aggregate sentence of only six years. He was, therefore, not sentenced to the maximum.

[16] As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). "When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that 'makes it different from the typical offense accounted for by the legislature when it set the advisory sentence.'" *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017) (quoting *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011)), *trans. denied*. In the present case, the nature of Johnson's offense was egregious. He fractured T.Z.'s eye socket, caused a laceration to her eyebrow, cracked four of her teeth in half, and repeatedly shoved a vacuum cleaner inside of her vagina. Johnson had carried on his relationship with T.Z. for several years during which he treated her like "scum, dog shit." *Tr. Vol. 2* at 90. From his perspective, once he has begun a sexual relationship with a woman such as T.Z., the concept of consent no longer existed. Johnson repeatedly attempted to force a woman to perform oral sex on and have intercourse with him. When she would not comply, he punched her in the face resulting in a fracture and permanent

damage to her eye socket. He then penetrated T.Z.'s vagina repeatedly with a vacuum cleaner hose and forced a pipe between T.Z.'s teeth breaking four of them in half. Johnson was convicted of one count of battery resulting in serious bodily injury, but he caused two serious injuries: one to T.Z.'s eye socket and the other to her teeth. Because of these injuries, T.Z. will incur thousands in medical bills to get her teeth fixed. He also put T.Z. through the emotional trauma of having someone she loves repeatedly violate her with a foreign object. His sentence is not inappropriate in light of the nature of his offenses.

[17]    The character of the offender is found in what we learn of the offender's life and conduct. *Perry*, 78 N.E.3d at 13. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Initially, Johnson argues that the trial court refused to consider any mitigating factors like his prior drug habits and addictions. However, Johnson did not argue for any mitigating circumstances at sentencing, and, on appeal, he has failed to provide a cogent argument on this issue. *Lee v. State*, 91 N.E.3d 978, 990-91 (Ind. Ct. App. 2017) (citing Ind. Appellate Rule 46(A)(8)(a)). He does not cite to any portion of the record, does not include the standard of review, and does not cite to any legal authority except for the statute listing possible mitigating circumstances.

[18]    As to his character, Johnson has a lengthy criminal history which includes offenses in Illinois, Kentucky, Indiana, and a federal weapons offense. He was on pretrial release for another felony charge in Daviess County when he committed the present offenses. Any criminal record reflects poorly on a

defendant's character because it demonstrates that a defendant has not been deterred "even after having been subject to the police authority of the State." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005); *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Additionally, the record contains no expression of remorse from Johnson toward a woman with whom he carried on a six-year romantic relationship. This does not reflect positively on his character.

[19] Johnson argues that "a review of the criminal history and information contained within the PSI indicates" that he is an "individual that has a severe issue with narcotics, has a history of abusing alcohol and drugs, and would benefit from treatment." *Appellant's Br*. at 11. However, at least some of these claims are not true. Johnson stated during his presentence investigation interview that he had not consumed alcohol since 2009 and had not used marijuana since 2001. *Appellant's Conf. App. Vol. II* at 210. He also stated that he had not used any other drug for at least a month prior to his arrest, with his last use of methamphetamine occurring about one month prior, and his last use of synthetic cannabinoids being at least six months prior to his arrest. *Id.* Based on the evidence, Johnson's sentence is not inappropriate in light of his character.

[20] Johnson has the burden of establishing that his sentence in inappropriate in light of both the nature of the offenses and his character. *See Childress*, 848 N.E.2d at 1080. We conclude that Johnson has not met his burden.

[21] Affirmed.

Bailey, J., and Mathias, J., concur